**UNITED STATES, Appellant,**

v.

**James PENISTER, III, Operations Specialist Third Class, U.S. Navy, Appellee.**

No. 54,943.
NMCM 85 3684.

U.S. Court of Military Appeals.

Sept. 30, 1987.

For the accused: *Lieutenant Richard K. Hodges*, JAGC, USNR (argued); *Lieutenant Commander James J. Quigley*, JAGC, USN (on brief).

For the United States: *Lieutenant T. J. Romine*, JAGC, USNR (argued); *Captain Carl H. Horst*, JAGC, USN, *Commander Michael P. Green*, JAGC, USN, and *Lieutenant Linda P. McIntyre*, JAGC, USNR (on brief).

### Opinion of the Court

EVERETT, Chief Judge:

A general court-martial consisting of a military judge alone tried the accused at Long Beach, California, on a charge that on February 8, 1985, he assaulted a fellow sailor with a loaded firearm and intentionally inflicted grievous bodily harm upon him, in violation of Article 128, Uniform Code of Military Justice, 10 U.S.C. § 928. Pursuant to his guilty pleas, Penister was convicted of the lesser-included offense of assault with a dangerous weapon, and the judge sentenced him to a bad-conduct discharge, confinement for 12 months, forfeiture of $300.00 pay per month for 12 months, and reduction to pay grade E-1.

Upon review of the case, the Court of Military Review concluded that the accused had been prejudiced by the military judge's rejection of his guilty pleas when initially the assault charge had been referred to a special court-martial. Accordingly, the findings of guilty and the sentence were set aside, and the record of trial was ordered returned to the convening authority, who was authorized either to direct special court-martial proceedings or to dismiss the charge and specification.

In turn, the Judge Advocate General of the Navy certified to us this issue:

WHETHER THE NAVY–MARINE CORPS COURT OF MILITARY REVIEW ERRED IN CONCLUDING THAT THE MILITARY JUDGE AT THE ACCUSED'S SPECIAL COURT-MARTIAL ABUSED HIS DISCRETION IN REJECTING THE ACCUSED'S GUILTY PLEAS, WHICH REJECTION RESULTED IN REFERRAL OF THE ACCUSED'S CASE TO A GENERAL COURT–MARTIAL.

I

After the aggravated-assault charge was preferred on March 26, 1985, Penister, who was assigned to the USS OGDEN, entered into a pretrial agreement with Captain C. R. Edwards, commanding officer of the vessel, which contained this provision:

In exchange for my offer to plead guilty to Article 128 (Assault) with intent to commit grievous bodily harm, the Convening Authority agrees to refer my case to a special court-martial rather than a general court-martial. This agreement is valid only if my pleas are entered and accepted as provident on or before 1 Apr 1985.

The convening authority was allowed by the agreement to approve whatever sentence the special court-martial adjudged.

Captain Edwards referred the charge to a special court-martial; and when the case came to trial on April 1, Penister entered the required guilty pleas. Thereupon, the military judge conducted an extensive providence inquiry—some 36 pages in the record—during which the accused, after being correctly advised of the elements of the offense charged, described in detail the events surrounding the shooting and admitted intending to injure the victim. The Court of Military Review summarized Penister's narrative in this manner:

The appellant stated that throughout the whole day he and the victim had been

"exchanging horseplay;" that this horseplay included verbal and physical aspects —i.e., the appellant tweaked the victim's nose several times and kidded him about its size—the victim at least twice grabbed the appellant's hand and twisted it, causing him pain, and the victim tormented the appellant by saying he would beat up the appellant because the appellant did not have his gun handy; that at about 2300 the two had begun a game of dominoes in the appellant's on-base quarters while awaiting the arrival of the victim's wife to drive him home; that the two had consumed some beer prior to arriving at the appellant's residence, with the appellant drinking "three—four" beers; that the appellant obtained a pistol from his upstairs bedroom, checked that it was loaded, laid it on the table while the game was in progress, and commented, "Well you said I didn't have my gun then you said what you'd do. Now, if I had taken you serious you'd be in a world of trouble," referring to the victim's earlier remarks about the appellant not having his gun with him; that he was not afraid of the victim (whom he considered a friend) but rather brought the pistol out as a continuation of the exchange of remarks and physical horseplay that had occurred earlier; that when Mrs. M arrived he described the horseplay to her and she began laughing; that the victim grabbed the appellant's left hand in a manner causing pain and this reminded the appellant of the earlier instances during the day when the victim had done the same thing to the appellant; that the appellant could not remember actually firing the shots but was familiar with statements by witnesses indicating he had raised the pistol, cocked it, and pulled the trigger; that the appellant recalled the victim falling out of his chair; and that the appellant aided the victim after the shooting.

Unpub. op. at 2.

Having heard the accused's account, and then having reviewed with him the terms of the pretrial agreement and determined that it was voluntary, the judge apparently was ready to accept the pleas; but, with commendable caution, he inquired whether "either counsel have any additional questions concerning the providenc[e] of the accused's pleas?" Trial counsel responded:

Your Honor, at this time the government would move that you reject the pleas and enter pleas of not guilty on his behalf. This is a specific intent offense, during the course of providenc[e] he brought up the alcohol and also his statement as to any lack of memory at the time, and as such we don't believe that specific intent has been sufficiently shown.

Defense counsel in turn replied:

Your Honor, OS3 Penister indicated that he was not drunk when he did the offense and that he did, in fact, experience anger and intend to shoot OS1 Marshall. We would urge the court to find that his pleas are provident, or if the court determines they are not provident we would ask the court to enter findings on a lesser included offense. But, we believe, Your Honor, that the pleas are, and the accused's response indicate, that his pleas are provident.

After a recess, the judge interrogated Penister again and determined that he had no problem with drinking, did not get drunk easily, had not felt that he was under the influence of alcohol, and had no reason to believe that he was incapable of forming the intention to inflict grievous bodily harm on his victim. Moreover, although Penister could not recall the incident itself, he had been thinking clearly enough to know that the shooting was not accidental.

The judge inquired of the defense whether there was any indication of need for a psychiatric inquiry; and, after a recess, he was assured by both trial and defense counsel that they had consulted with medical authorities and believed that there was no necessity for psychiatric evaluation. Penister then assured the judge that he also believed that there was no need for

such inquiry. Finally, after still another recess, the judge ruled:

At this stage of the game I do find specifically that the accused was not of such an intoxicated state on the night in question that that would have prevented him from forming the intent in question to inflict grievous bodily harm. On the other hand, at this stage I'm also not convinced after having talked to the accused quite extensively during this particular hearing that he is personally convinced, and truly believes, that he did, in fact, intend to inflict grievous bodily harm upon the victim in this case, Petty Officer Marshall. Accordingly, I'm going to have to reject the accused's plea of guilty in this particular case. I do that knowing and understanding that it is in all likelihood, according to the pretrial agreement, going to abate or cancel the terms of the pretrial agreement. However, I will entertain pleas by the accused to lesser included offenses and offer the government the opportunity to further discuss this case before going forward to determine whether a lesser, or a plea to a lesser included offense would be at all acceptable to the government.

Thereafter, Penister entered pleas to the lesser-included offense of assault with a dangerous weapon; but trial counsel announced that the Government did not intend to be bound except as provided in the pretrial agreement, which called for pleas to the original assault charge. The case was then continued for 2 days to determine whether the convening authority wished to withdraw the charge from the court-martial; and when court reconvened on April 3, trial counsel stated that, after meeting with the convening authority, he had been instructed to withdraw the charge. In this connection, he recited that, since

Penister has failed to abide by his portion of the agreement, the government feels that the—therefore the agreement is void as the date is passed, and the option of the convening authority, as ex-

pressed in the agreement and as understood by all parties, was that if indeed Petty Officer Penister did not enter pleas as charged, on or before 1 April, the case would, in fact, be withdrawn from this court-martial and further proceedings held. Those proceedings would not exclude the attempt—or the processing for a general court-martial.

Over defense objection, the military judge allowed withdrawal of the charges.

Subsequently, the Commander, Naval Base San Diego, referred the charge of intentionally inflicting grievous bodily harm with a firearm to a general court-martial. Penister entered into a pretrial agreement with this officer, whereunder he would plead guilty to assault with a dangerous weapon; and the convening authority agreed that any confinement in excess of 24 months would be suspended for 6 months from the date of trial. Before trial began, the accused objected to rereferral of the charge and requested specific performance of the original agreement. However, the judge rejected the defense contentions. Thereupon, the accused entered his pleas of guilty to assault with a dangerous weapon, as contemplated in the second pretrial agreement. The pleas were accepted as voluntary, and pursuant thereto, findings of guilty were entered.*

## II

■ Although an accused has no constitutional right to plead guilty, see *Santobello v. New York*, 404 U.S. 257, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971), he does have the right to offer a guilty plea. *See* Art. 45, UCMJ, 10 U.S.C. § 845; R.C.M. 910(a)(1), Manual for Courts-Martial, United States, 1984. Of course, the plea cannot be accepted if the accused testifies or otherwise "sets up matter inconsistent with the plea." Art. 45(a).

■ The plea of guilty may be entered pursuant to a pretrial agreement. Unlike its predecessors, the 1984 Manual for Courts-Martial deals specifically with such

---

* The Government called the victim to testify on sentence but not as to findings.

agreements. That Manual permits the pretrial agreement originally entered by Penister since, in return for a guilty plea, a convening authority may agree with an accused to "[r]efer the charges to a certain type of court-martial." R.C.M. 705(b)(2)(A). The condition in the agreement whereunder the agreement would "become null and void in the event ... the court refuses to accept my plea of 'Guilty' to any of the charges and specifications" is customary and is appropriate in order to assure the convening authority the benefit of his bargain.

According to R.C.M. 705(d)(5), "[t]he accused may withdraw from a pretrial agreement at any time"; and

> [t]he convening authority may withdraw from a pretrial agreement at any time before the accused begins performance of promises contained in the agreement, upon the failure by the accused to fulfill any material promise or condition in the agreement, when inquiry by the military judge discloses a disagreement as to a material term in the agreement, or if findings are set aside because a plea of guilty entered pursuant to the agreement is held improvident on appellate review.

*See also Shepardson v. Roberts,* 14 M.J. 354 (C.M.A.1983).

Penister certainly began the performance of his promise to plead guilty. Indeed, short of committing perjury, he did all within his power to assure fulfillment of the pretrial agreement. The motive for his efforts is obvious. When trial counsel moved to reject the guilty plea, however, he started a chain of events which led to frustration of the agreement. We do not criticize him for being concerned that any finding based on a guilty plea be immune from successful attack on appeal. Even so, we cannot ignore the fact that, by his motion, trial counsel—a representative of the convening authority—initiated action that prevented fulfillment of a condition of the pretrial agreement.

We recognize that a military judge has a responsibility to assure that a guilty plea is provident. In light of this Court's opinions emphasizing this responsibility, it is understandable that a judge may err on the side of caution and not accept a guilty plea when there is any question as to its providence. Moreover, we are aware that sometimes the providence of the guilty plea may involve complex issues of substantive law. *See, e.g., United States v. Byrd,* 24 M.J. 286 (C.M.A.1987); *United States v. Acevedo-Velez,* 17 M.J. 1 (C.M.A.1983).

■ A military judge, however, may not arbitrarily reject a guilty plea. *United States v. Johnson,* 12 M.J. 673 (A.C.M.R. 1981), *pet. denied,* 13 M.J. 239 (1982); *United States v. Williams,* 43 C.M.R. 579, 582 (A.C.M.R.1970). Moreover, if a guilty plea is arbitrarily rejected, we doubt that such an event can be considered "failure *by the accused* to fulfill any material promise or condition in the agreement." R.C.M. 705(d)(5)(B) (emphasis added). Likewise, if the military judge rejects a provident guilty plea because of a misapplication or misunderstanding of the law, this can hardly be deemed "failure by the accused."

■ The Court of Military Review could not understand the military judge's reluctance to accept the guilty pleas. Even though Penister was unable specifically to recall shooting the victim, his lack of recollection would not, by itself, preclude entry of a valid guilty plea if he was convinced of his guilt based on reliable evidence. *United States v. Moglia,* 3 M.J. 216 (C.M.A. 1977); *United States v. Luebs,* 20 U.S.C. M.A. 475, 476, 43 C.M.R. 315, 316 (1971); *United States v. Butler,* 20 U.S.C.M.A. 247, 248, 43 C.M.R. 87, 88 (1977). This principle applies even when, as here, the offense charged involves a specific intent. *See United States v. Luebs* and *United States v. Butler,* both *supra.*

■ With this in mind, the Court of Military Review examined the providence inquiry and was convinced that no inconsistency existed between the accused's responses and his pleas of guilty. We come to the same conclusion. Likewise, we concur in the view of the Court of Military Review that the military judge erred in setting aside the pleas of guilty.

Under these circumstances, we are convinced that the convening authority was

not free to withdraw from the pretrial agreement. The convening authority could not take advantage of noncompliance with a condition in the agreement requiring acceptance of a guilty plea when his own representative—trial counsel—moved that the pleas be rejected. Plea bargains are not subject to all the rules of conventional contract law, *see United States v. Kazena,* 11 M.J. 28, 34 (C.M.A.1981) (Everett, C.J., concurring in the result); but undoubtedly the principle applies that one party to an agreement cannot avail himself of a default by the other party which he himself has caused.

■ In any event, the pretrial agreement was subject to the Manual for Courts-Martial—including R.C.M. 705(d)(5)(B), which prescribes when a convening authority may withdraw. Since the judge's erroneous rejection of the guilty plea was not a "failure by the accused," and since the accused had fully performed his promise, the convening authority's withdrawal from the agreement contravened this Rule.

■ Had the convening authority been entitled to abrogate the pretrial agreement because of appellant's noncompliance with a material condition, he could have withdrawn the charge from the special court-martial; and, in turn, he could have referred it to a general court-martial. R.C.M. 604; *cf. United States v. Blaylock,* 15 M.J. 190 (C.M.A.1983). However, as the Court of Military Review discerned, the convening authority was still bound by the pretrial agreement and should have allowed trial by special court-martial to continue. Since, instead, the charge was improperly withdrawn from the special court-martial and rereferred to a general court-martial, Penister is entitled to relief.

■ Insofar as the quantum of the sentence is concerned, a remedy is available by disapproving so much of the sentence as exceeds that which could have been imposed by a special court-martial. However, as the Court of Military Review perceived, the change in forum from special court-martial to general court-martial in itself prejudiced appellant. In addition to a possibly greater stigma resulting from a conviction by general court-martial, a punitive discharge adjudged by a general court-martial may have adverse legal effects which do not attach to a punitive discharge imposed by a special court-martial. *See* 38 U.S.C. 3103(a). Accordingly, the disposition ordered by the Court of Military Review is appropriate.

The certified question is answered in the negative.

### III

The decision of the United States Navy-Marine Corps Court of Military Review is affirmed.

Judge SULLIVAN concurs.

COX, Judge (concurring):

I agree with the majority opinion and the decision of the Court of Military Review. I do not construe Article 45, Uniform Code of Military Justice, 10 U.S.C. § 845, so strictly as to require an accused to admit unequivocally each and every element of an offense. It is sufficient that:

He knowingly and voluntarily admits his guilt;

He knowingly and voluntarily gives up his trial rights; and

He knowingly and voluntarily gives up his defenses to the charges.

Often an accused is reluctant to admit to a particular aspect of an offense. However, that should not vitiate his guilty plea if he recognizes that the evidence against him will prove the point, and he admits his guilt to the offense.

We should not overlook human nature as we go about the business of justice. One aspect of human beings is that we rationalize our behavior and, although sometimes the rationalization is "inconsistent with the plea," more often than not it is an effort by the accused to justify his misbehavior.

A good trial judge can usually sort out the guilty plea and determine if an accused is so pleading because he has committed the offense charged. A good military judge will also *make such a finding on the record,* which is the true purpose of Article 45.