Judge EFFRON
delivered the opinion of the Court.
Appellant was charged with unauthorized absence and missing movement by design in violation of Articles 86 and 87, Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 886, 887 (2000). At a special court-martial composed of a military judge sitting alone, Appellant entered pleas of guilty to unauthorized absence and missing movement by neglect. The military judge accepted the plea to the unauthorized absence charge, but he determined that the plea to the missing movement charge was improvident. Appellant subsequently contested the missing movement charge. After considering evidence from both parties, the military judge found Appellant guilty of missing movement by design. Pursuant to Appellant’s earlier plea, the military judge also found Appellant guilty of unauthorized absence. In the findings, the military judge made minor modifications that are not pertinent to the present appeal. The military judge sentenced Appellant to a bad-conduct discharge and confinement for five months.
The convening authority approved the sentence and remitted confinement in excess of forty-four days. The United States Navy-Marine Corps Court of Criminal Appeals affirmed the finding of unauthorized absence, reduced the finding of missing movement through design to missing movement through neglect, and affirmed a sentence of a bad-conduct discharge and thirty days of confinement. United States v. Parker, 60 M.J. 666 (N.M.Ct.Crim.App.2004).
On appellant’s petition, we granted review of the following issue:
WHETHER THE LOWER COURT ERRED WHEN IT REFUSED TO ENFORCE THE PRETRIAL AGREEMENT’S PROVISION TO SUSPEND THE BAD-CONDUCT DISCHARGE.
For the reasons discussed below, we affirm.
I. BACKGROUND
A. PLEA INQUIRIES AND PRETRIAL AGREEMENTS
Under United States v. Care, 18 C.M.A. 535, 541, 40 C.M.R. 247, 253 (1969), and its progeny, there are specific requirements governing guilty pleas in the military justice system. Prior to accepting a guilty plea, the military judge must provide detailed advice to the accused and ensure that the accused understands the meaning and effect of the plea. Rule for Courts-Martial (R.C.M.) 910(c). The military judge may not accept a plea of guilty without addressing the accused personally and determining that the plea is voluntary. R.C.M. 910(d). In addition, the military judge may not accept a plea of guilty without questioning the accused and ensuring that there is a factual basis for the plea. Id. As noted in the R.C.M. 910(d) Discussion, “the accused must admit every element of the offense(s) to which the accused pleaded guilty.” The R.C.M. 910(d) Discussion also states: “The accused need not describe from personal recollection all the circumstances necessary to establish a factual basis for the plea. Nevertheless the accused must be convinced of, and be able to describe all the facts necessary to establish guilt.” The decision of a military judge to reject a guilty plea will not be overturned unless it is arbitrary. United States v. Penister, 25 M.J. 148, 152 (C.M.A.1987) (“[A] judge may err on the side of caution and not accept a guilty plea when there is any question as to its providence.”).
An accused and the convening authority may enter into a pretrial agreement, subject to R.C.M. 705. Under the rule,(for example, an accused may agree to plead guilty to one or'more charges and specifications, and the convening authority may agree to limit, suspend, or mitigate all or portions of the sentence. See, e.g., R.C.M. 705(b)(1); R.C.M. 705(b)(2)(E); R.C.M. 705(b)(2)(E) Discussion. When there is a plea agreement, the military judge must ensure that the accused under *461 stands the agreement, that any unclear terms are clarified, and that all parties agree to the terms of the agreement. R.C.M. 910(f); R.C.M. 910(h)(3); R.C.M. 910(f)(4) Discussion.
An accused may withdraw from a pretrial agreement at any time, subject to the rules governing guilty pleas and confessional stipulations. See R.C.M. 705(d)(4)(A). After trial, and prior to the convening authority’s action, the accused may initiate a modification of the pretrial agreement, so long as the accused has the assistance of counsel, the modification is the product of a fully informed and considered decision, and it is not the product of a coercive atmosphere. United States v. Pilkington, 51 M.J. 415, 416 (C.A.A.F.1999).
The convening authority may withdraw from a pretrial agreement under four specified circumstances: (1) “at any time before the accused begins performance of promises contained in the agreement”; (2) “upon the failure by the accused to fulfill any material promise or condition in the agreement”; (3) “when inquiry by the military judge discloses a disagreement as to a material term in the agreement”; and (4) “if findings are set aside because a plea of guilty entered pursuant to the agreement is held improvident on appellate review.” R.C.M. 705(d)(4)(B).
B. THE PRETRIAL AGREEMENT BETWEEN APPELLANT AND THE CONVENING AUTHORITY
The charged offenses involved two related matters: (1) Appellant’s unauthorized absence of 134 days; and (2) Appellant’s missing the deployment of his unit to Okinawa by “design” on a specified day within that period. Appellant and the convening authority entered into a pretrial agreement that expressly provided that “[a]ll provisions of this Agreement are material.” Appellant agreed to plead guilty to the charged unauthorized absence and to a lesser offense of missing movement through neglect. In return, the convening authority agreed to: (1) suspend a bad-conduct discharge, if adjudged; and (2) suspend any confinement in excess of thirty days, if adjudged. In the agreement, Appellant expressly stated: “I understand that if my guilty pleas do not remain in effect for any reason through the announcement of the sentence, then the convening authority may withdraw from this Agreement.”
C. THE PROVIDENCE INQUIRY
Consistent with the pretrial agreement, Appellant entered pleas of guilty at trial to the unauthorized absence charge and to the offense of missing movement by neglect. The military judge explained the plea inquiry process to Appellant, specifically noting: “If at any time you become confused or have any questions, stop me and I’ll give you the opportunity to consult with your attorney.”
The military judge conducted an inquiry into the providence of the pleas, ultimately concluding that Appellant’s plea was provident as to the unauthorized absence offense. The inquiry into unauthorized absence and Appellant’s conviction for that offense are not at issue in the present appeal.
With respect to missing movement by neglect, the military judge provided the following description of the elements:
Number one, that you were required in the course of duty to move with 3d Battalion, 11th Marines, 1st Marine Division.
The second element is that you knew of the prospective movement of the unit.
The third element is that on or about the 7th of August 2000, at Marine Air Ground Task Force Training Command, Twenty-nine Palms, California, you missed the movement of that unit.
And the fourth element is that you missed the movement through neglect.
See Manual for Courts-Martial, United States pt. IV, para, 11.b (2005 ed.). In addition, the military judge offered the following explanation of certain terms used in the elements:
The word “movement” as used in this specification means a major transfer of a unit involving a substantial distance and period of time. The word does not include practice marches of a short duration and distance, nor minor changes in the location of a unit. *462 In order to plead guilty to this offense, you must have actually known of the prospective movement that was missed. Knowledge of the exact hour, even the exact date of the scheduled movement is not required. It is sufficient if the approximate date was known by you as long as there is a causal connection between your conduct and the missing of the scheduled movement.
The “term neglect” [sic] means the omission to take such measures as are appropriate under the circumstances to assure presence with an aircraft, unit, or ship at the time of the scheduled movement, or doing some act without giving attention to its probable consequences in connection with the prospective movement to such a distance as would make it likely that the one could not return in time for the movement.
See id. para. ll.c.
Appellant responded affirmatively to the military judge’s general inquiry as to whether the elements described what he “did on that occasion.” In response to the military judge’s question about knowledge of the movement, Appellant acknowledged that he had heard from his superior noncommissioned officers that the unit was going to Okinawa in early August 2000. The military judge then sought to determine whether the impending movement was the subject of official orders communicated to Appellant or whether he had simply heard barracks rumors:
MJ: And you knew of the movement, the place and time because your NCOs [non-commissioned officers] had told you, and that was also common knowledge in the battalion?
ACC: No, sir. I heard it through — they were talking about it, sir. I just over heard [sic] it, sir.
MJ: Well, how did you know they were accurate? Lots of people talk about stuff all the time and never -so you just heard some rumors that you all might be going to Okinawa?
ACC: Yes, sir.
Following Appellant’s acknowledgement that his knowledge of a possible deployment was the result of “rumors,” the military judge stated: “Okay. I’m not going to take his plea.” After a brief, thirteen-minute recess, the military judge asked if defense counsel needed additional time in order to consult with Appellant. Defense counsel then requested a continuance, which the military judge granted. Defense counsel offered no objection to the military judge’s plea inquiry or his decision to not accept the plea.
During the continuance, Appellant attempted to enter into a new pretrial agreement with the convening authority based upon the unauthorized absence charge, but the convening authority declined to do so. When the court-martial convened a month later, the defense did not ask the military judge to reopen the providence inquiry, nor did the defense otherwise challenge the military judge’s ruling on providence. In response to the military judge’s inquiry about motions, the defense replied that he had none.
The military judge asked Appellant whether he understood that the convening authority was no longer bound by the plea agreement in view of the prior rejection of the plea. Appellant responded in the affirmative. After noting that Appellant’s request for a bench trial was based, at least in part, on the pretrial agreement that was no longer in effect, the military judge offered Appellant the opportunity to revisit his forum choice. Appellant reaffirmed his desire for a judge-alone proceeding.
D. MISSING MOVEMENT — THE CONTESTED CHARGE
The military judge obtained the agreement of both parties that Appellant’s provident plea to the absence offense would establish one of the four elements of missing movement — that he was not present when his unit deployed. The military judge emphasized that the Government would bear the burden of proving the remaining elements — that he was required to move with his unit, that he knew of the prospective movement, and that he missed the movement by design or neglect.
*463 Trial on the merits focused primarily on the same concerns that had been raised in the providence inquiry regarding Appellant’s awareness of a deployment order. The prosecution introduced the testimony of personnel in Appellant’s chain of command who described the information regarding deployment to Okinawa that was conveyed to the unit, as well as evidence that Appellant was present for at least some of those briefings,
Defense counsel, in his opening statement, expressly set forth the defense position — that Appellant “did not have actual knowledge that the unit was deploying to Okinawa in August.” Appellant, who was the primary witness in his own behalf, testified that he had no recollection of being advised of a deployment to Okinawa. He specifically denied that anyone in an official capacity had communicated to him that the unit was going to Okinawa, including the prosecution’s witnesses from his chain of command.
Defense counsel, in his closing statement, contended that the discussions within the unit amounted to nothing more than general information about potential deployments, and that Appellant “did not have actual knowledge” of a specific deployment. The prosecution argued in rebuttal that the military judge, as factfinder, could infer actual knowledge from circumstantial evidence, particularly the information that had been made available to the unit. After making minor changes in the wording of the charges, the military judge entered findings of guilty to the contested charge of missing movement by design, and of the uncontested charge of unauthorized absence.
E. SENTENCING — APPELLANT’S FIRST REQUEST FOR A BAD-CONDUCT DISCHARGE
During the sentencing proceedings, Appellant made a brief unsworn statement in which he recounted his problems in high school and in the service. After acknowledging his problems, he said: “I kept on getting in trouble no matter how hard I tried. So I took it into my own hands and went UA [unauthorized absence].” Appellant expressly requested a punitive discharge: “I’m sorry for the trouble I have caused and respectfully request a bad-con-duet discharge.” He concluded his statement by noting: “My attorney has advised me of the negative aspects of a bad-conduct discharge; however, I still request it. Thank y0u.” See United States v. Pineda, 54 M.J. 298, 300-01 (C.A.A.F.2001) (setting forth proeedural requirements when an accused requests a punitive discharge).
The prosecution made a very brief sentencing argument, recommending a bad-conduct discharge and “an appropriate amount of confinement.” Defense counsel noted Appellant’s request for a bad-conduct discharge, pointed out that the missing movement offense took place during the period of unauthorized absence, and asked the military judge to limit confinement to thirty days. The military judge sentenced Appellant to confinement for five months and a bad-conduct discharge.
F. APPELLANT’S SECOND REQUEST, SPECIFICALLY ASKING THE CONVENING AUTHORITY TO NOT SUSPEND THE BAD-CONDUCT DISCHARGE
Subsequent to trial, defense counsel submitted a request for clemency to the convening authority under R.C.M. 1105. The request began by reminding the convening authority that Appellant “went to court with a pretrial agreement that stated that in return for his pleas of Guilty ... you agreed to suspend any discharge and any confinement in excess of 30 days.” Defense counsel emphasized that the plea had been rejected because Appellant fulfilled his obligation to the truth during the providence inquiry:
[T]he Military Judge would not accept a guilty plea to the missing movement charge because Pvt [Private] Parker stated that although it was common knowledge that the unit was going to Okinawa that summer, he couldn’t recall ever specifically being told that by someone in an official capacity. Pvt Parker wanted to plead guilty, but based on his memory and what *464 he could honestly testify to the judge would not accept his plea.
After recounting the results of trial, defense counsel urged the convening authority to use the pretrial agreement as the framework for post-trial action with respect to confinement:
It is requested that you suspend any confinement in excess of 30 days. The Defense requests that when considering this request for clemency that you take into account that this was one of the terms agreed to in the original agreement. Although you decided to withdraw from the agreement when a guilty finding was not entered for the missing movement charge, the defense urges you to consider that Pvt Parker attempted to plead guilty to this charge and that it was the military judge that refused to accept the plea.
With respect to the bad-conduct discharge, however, defense counsel implored the convening authority to disregard his prior agreement to suspend the punitive discharge, emphasizing with capital letters that his client “does NOT desire his Bad Conduct Discharge be suspended.”
The convening authority responded to the defense request by ordering Appellant’s release from confinement even though the ease had not yet been presented to him for action. As a result, Appellant’s sentence to confinement was reduced from the five months adjudged at trial to forty-four days.
G. APPELLANT’S THIRD REQUEST, REITERATING HIS OPPOSITION TO SUSPENSION OF THE BAD-CONDUCT DISCHARGE
Prior to the convening authority’s formal action on the findings and sentence, the defense made a further submission to the convening authority. After noting that the defense had previously submitted a clemency request, defense counsel reiterated Appellant’s opposition to suspension of the adjudged discharge:
Since Pvt Parker was released prior to the end of his sentence and he does NOT desire that his Bad Conduct Discharge be suspended, the defense has no request for clemency.
In accordance with Appellant’s post-trial submissions, the convening authority approved a sentence that included the modified period of confinement and an unsuspended bad-conduct discharge.
H. REVIEW BY THE COURT OF CRIMINAL APPEALS
The Court of Criminal Appeals held that the military judge should have accepted Appellant’s plea in its entirety, on the grounds that Appellant articulated sufficient facts to support a plea of guilty to missing movement by neglect. Parker, 60 M.J. at 669. The court substituted a finding of missing movement by neglect in lieu of the finding of missing movement by design. Id. at 671. The court further held that the pretrial agreement should have remained in effect, and it reduced Appellant’s confinement from forty-four days to thirty days to reflect the terms of the agreement. Id. at 669 (citing Penister, 25 M.J. at 153). Based upon Appellant’s multiple requests for an unsuspended bad-conduct discharge, the court concluded that the portion of the pretrial agreement regarding suspending the bad-conduct discharge was no longer in effect, and declined to provide further relief. Id. at 670.
II. DISCUSSION
Appellant contends in the present appeal that his discharge should be suspended in accordance with the original pretrial agreement. We note that the Government has not appealed the ruling of the court below with respect to either the modification of the findings to conform with Appellant’s plea, or the revision of the confinement portion of the sentence to conform with the pretrial agreement. When a party does not appeal a ruling, the ruling of the lower court normally becomes the law of the case. See United States v. Doss, 57 M.J. 182, 185 (C.A.A.F.2002). The law-of-the-case doctrine, however, is a matter of appellate policy, not a binding legal doctrine. Because the law-of-the-case doctrine is discretionary, it need not be applied when the lower court’s decision is “clearly erroneous and would *465 work a manifest injustice.” Id. at n. * (citing United States v. Williams, 41 M.J. 134, 135 n. 2 (C.M.A.1994)).
In the present case, it would be inappropriate to apply the law-of-the-case doctrine. With respect to the first prong of Doss, the ruling of the court below was clearly erroneous. As noted in Penister, the military judge has broad discretion to “err on the side of caution” in deciding whether to accept a plea. 25 M.J. at 152. Here, when the military judge perceived that Appellant was not prepared to agree that his actions satisfied an element of the offense, he was well within his discretion in deciding not to accept the plea.
Contrary to the suggestion of the court below that the military judge’s action had the effect of “cutting off further inquiry,” Parker, 60 M.J. at 669, the military judge did not interrupt Appellant or counsel, nor did he move directly to enter a plea. Once the military judge said that he could not accept the plea in light of Appellant’s responses, he called a recess. After the recess, the military judge asked Appellant if he needed additional time to consult with counsel. He then granted defense counsel’s motion for an extended continuance. These steps provided Appellant with ample opportunity — if he was prepared to plead providently — to request that the military judge reopen the plea inquiry, but no such request was forthcoming.
We also note that the lower court: (1) failed to conduct a plain error review even though Appellant did not object to the ruling on providence at trial, see United States v. Powell, 49 M.J. 460, 465 (C.A.A.F.1998); (2) applied an incorrect de novo standard of review rather than determining whether the military judge’s decision was arbitrary under Penister; and (3) improperly conducted a legal sufficiency analysis in lieu of considering whether the military judge had a reasonable basis for concluding that Appellant had not conceded the elements pertaining to actual knowledge of an official deployment decision. See United States v. Hardeman, 59 M.J. 389, 392 (C.A.A.F.2004).
With respect to the manifest injustice prong of Doss, we focus on the specific context of this case. We first consider whether the Government had an incentive to appeal, and we then consider the relationship of the remedy sought to the circumstances of the case.
In the present case, the Government had little incentive to appeal the erroneous aspects of the lower court’s decision. The Government emerged from the proceedings below with a conviction for a closely related offense — missing movement by neglect — and all of the adjudged sentence except for fourteen days of confinement, a period that Appellant had already served. If we were to apply the law-of-the-case doctrine here, we would be sending the Government a message that an appeal should be lodged in every case where the lower court has articulated an incorrect legal standard — no matter how incidental the error from the Government’s perspective, and no matter how insignificant the result — lest the Government be precluded from noting that error in the event the defense should appeal. Given the discretionary nature of the law-of-the-case doctrine, we decline to apply it in a manner that would be so contrary to the sound administration of justice.
Applying the law-of-the-case doctrine would be manifestly unjust under the circumstances of the present appeal. First, we note that the military judge correctly advised the parties that the pretrial agreement no longer was in effect. The parties agreed on the record, recognizing that the plain text of the agreement supported the military judge’s position.
Second, we take into account Appellant’s express request that the convening authority not grant the relief he now seeks. In contrast to the court below, Parker, 60 M.J. at 670, our focus here is not on whether Appellant withdrew from the agreement, but whether we should exercise our discretion in applying the law of the case to provide Appellant with the relief that he repeatedly and expressly rejected. Appellant specifically requested a sentence at trial that included a bad-conduct discharge, even though he was informed of the adverse consequences of a punitive separation. The military judge *466 granted his request. After trial, defense counsel referenced the pretrial agreement and — expressly and emphatically — stated that Appellant did not want the convening authority to suspend the adjudged bad-conduct discharge. After the convening authority granted clemency on confinement, Appellant made a further submission, reiterating his desire for an unsuspended bad-conduct discharge. The convening authority granted his request.
Appellant now contends that we should disregard his post-trial requests for an unsuspended discharge because they were the product of an adverse tactical situation created by the loss of his pretrial agreement when the military judge rejected his plea. Appellant suggests that in the face of an adjudged sentence to five months of confinement, as opposed to the thirty days of confinement provided for in the pretrial agreement, the defense made a tactical choice. The defense implies that Appellant chose to not request a suspended punitive discharge in order to focus the convening authority’s attention on the issue of confinement.
The record expressly refutes Appellant’s suggestion that Appellant’s request for a punitive discharge was the product of a tactical decision. Six months prior to the convening authority’s action on the sentence, the convening authority ordered Appellant’s release from confinement, and remitted the balance of the adjudged sentence to confinement. A month prior to the convening authority’s action — when confinement was no longer at issue — defense counsel made a further submission to the convening authority reiterating in capital letters that “Appellant does NOT desire that his Bad Conduct Discharge be suspended.” At that point, only the discharge was at issue, so there was no tactical reason for Appellant to insist that the convening authority disregard the pretrial agreement’s provision for suspension of a punitive discharge. The defense submission, however, unequivocally stated that “the defense has no request for clemency.”
This case does not involve a claim that these choices were the product of ineffective assistance of counsel or that these choices were not made voluntarily by Appellant. See Pilkington, 51 M.J. at 416. The military judge’s decision did not make it necessary for Appellant to take the unusual step of requesting that his sentence include a punitive discharge. More important, the plea decision did not preclude Appellant from asking the convening authority to provide the relief set forth in the pretrial agreement by suspending the punitive discharge, particularly after his release from confinement.
Applying Doss, we decline to apply the law-of-the-case doctrine where the Government had little incentive to appeal, where the decision of the court below was clearly erroneous, and where reliance on the doctrine would permit Appellant to benefit from that erroneous ruling and require a convening authority to provide Appellant with the very relief that he had rejected on numerous occasions.
The pretrial agreement between Appellant and the convening authority expressly provided that the convening authority could withdraw from the agreement if Appellant’s plea did not remain in effect “for any reason.” The military judge ruled that Appellant’s plea was improvident, a ruling well within the range of his discretion. Under these circumstances, the convening authority acted within the terms of agreement when he withdrew from it. Appellant is not entitled to enforcement of the agreement.
III. DECISION
The decision of the United States Navy-Marine Corps Court of Criminal Appeals is affirmed.