UNITED STATES, Appellee

v.

Jeremy C. CLIFTON, Specialist
U.S. Army, Appellant

No. 12-0486

Crim. App. No. 20091092

United States Court of Appeals for the Armed Forces

Argued December 3, 2012

Decided February 14, 2013

BAKER, C.J., delivered the opinion of the Court, in which RYAN, J., and EFFRON, S.J., joined. ERDMANN, J., filed a separate opinion concurring in part and in the result. STUCKY, J., filed a separate opinion concurring in the result.

<u>Counsel</u>

For Appellant: Captain Kristin B. McGrory (argued); Colonel Patricia A. Ham, Lieutenant Colonel Imogene M. Jamison, and Major Jacob D. Bashore (on brief).

For Appellee: Captain Sasha N. Rutizer (argued); Lieutenant Colonel Amber J. Roach and Major Robert A. Rodrigues (on brief); Major Julie A. Glascott.

Military Judge: Charles A. Kuhfahl

<u>**THIS OPINION IS SUBJECT TO REVISION BEFORE FINAL PUBLICATION**</u>.

Chief Judge BAKER delivered the opinion of the Court.

A military panel composed of officers and enlisted members sitting as a general court-martial convicted Appellant, contrary to his pleas, of giving a false official statement and aggravated assault by a means likely to cause death or grievous bodily harm, in violation of Articles 107 and 128, Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 907, 928 (2006). The adjudged and approved sentence included confinement for six months and a bad-conduct discharge. On review, the United States Army Court of Criminal Appeals affirmed the findings and the sentence. United States v. Clifton, No. ARMY 20091092, 2012 CCA LEXIS 139, at *9-*10, 2012 WL 1405727, at *3 (A. Ct. Crim. App. Apr. 23, 2012).

On Appellant's petition, we granted review of the following issue:

> WHETHER THE ARMY COURT OF CRIMINAL APPEALS ERRED WHEN IT DETERMINED THE MILITARY JUDGE COMMITTED ERROR BY DENYING A PANEL MEMBER'S REQUEST TO CALL ADDITIONAL WITNESSES FOR QUESTIONING, BUT FOUND THE ERROR TO BE HARMLESS.

For the reasons set forth below, and assuming forfeiture rather than waiver, we conclude that the military judge erred, but that the error was not prejudicial.

## BACKGROUND

Appellant was accused of injuring his two-month-old daughter K, who had skull, clavicle, and rib fractures

2

consistent with child abuse.  The Government's witnesses included Appellant's wife and Dr. Thomas Ellwood, a medical expert.  During the trial, Appellant's wife testified at length; her testimony spanned over fifty pages of the record.  Dr. Ellwood also testified at length; his testimony spanned about forty pages.

During the cross-examination of Appellant's wife, defense counsel elicited testimony to suggest that Appellant's wife had committed the child abuse.  Defense counsel attempted to show that Appellant's wife had unique access to her daughter and implied that it was suspicious that Appellant's wife had not noticed K's injuries before.  For example, defense counsel asked, "[Y]ou never noticed that [K] had any kind of sickness?" and "How many times per day did you see her rib cage?"  Defense counsel also asked, "And you never once saw a bruise on [K's] body?"  In addition, defense counsel asked, "Shortly after [K] was put in the hospital you had a conversation with [Appellant] on one occasion . . . [and] [y]ou told [him] that you thought it might be a good idea if one of you confessed?"

During the cross-examination of Dr. Ellwood, defense counsel asked whether Appellant and his wife "show[ed] any signs of aggressiveness or anything like aggressiveness."  Defense counsel also asked whether K's femur fracture was consistent with child abuse.  The femur fracture was an older injury that

Appellant's wife said she may have caused when "stumbling" while holding K or one that Appellant may have caused when "he was changing one of [K's] diapers or playing [with her]."

The members submitted twenty-three pages of questions during the presentation of evidence, comprising thirty-two separate questions. Of those, Master Sergeant (MSG) H submitted five pages of questions comprising seven questions. Trial counsel and defense counsel lodged an objection to one page of questions. No objections were lodged against any of MSG H's questions.

In his closing argument, defense counsel argued that "the only time at which any child could have been hurt that badly and not have the other parent notice" was when Appellant's wife was alone with her children. He further argued, "[Appellant's wife] got angry, got frustrated and she squeezed [K's] ribs and caused that damage."

After closing arguments by both counsel and instructions on findings by the military judge, but before the members closed to deliberate, a panel member, MSG H, asked the military judge if it was "too late to recall two of the witnesses" because he had "two questions." MSG H stated the first witness he wanted to recall was "[e]ither Dr. Ellwood or one of the other doctors." The second witness MSG H wanted to recall was Appellant's wife.

4

The military judge did not ask MSG H what questions he wanted to ask each of the witnesses. The military judge immediately disapproved MSG H's request because the medical doctors had "been permanently excused." In response to MSG H's request to recall Appellant's wife, while not finding her to have been permanently excused, the military judge immediately disapproved the request because "we have closed all the evidence." The military judge asked both counsel whether they had an objection to his response to MSG H's request to recall these witnesses. Both counsel stated that they had no objection.

### DISCUSSION

Article 46, UCMJ, 10 U.S.C. § 846 (2006), gives panel members the "opportunity to obtain witnesses and other evidence." Under Rule for Courts-Martial (R.C.M.) 921(b), "[m]embers may request that the court-martial be reopened and that . . . additional evidence [be] introduced. The military judge, may, in the exercise of discretion, grant such request." In addition, Military Rule of Evidence (M.R.E.) 614(a) allows members to request to call or recall witnesses to testify at a court-martial.

Ordinarily, where defense counsel affirmatively responds "no objection" to a military judge's denial of a panel member's request to call additional witnesses for questioning, we would

consider whether an appellant waived the issue.  In this case,
we need not reach the issue of waiver because, even assuming
that Appellant merely forfeited the issue, we conclude that he
failed to carry his burden to show prejudice under a plain error
analysis.

Under a plain error analysis, this Court will grant relief
in a case of nonconstitutional error only if an appellant can
demonstrate that (1) there was error; (2) the error was plain
and obvious; and (3) the error materially prejudiced a
substantial right of the accused.  United States v. Powell, 49
M.J. 460, 464-65 (C.A.A.F. 1998).

I.   Whether there was error and whether it was plain or
     obvious

This Court reviews a military judge's denial of a panel
member's request to recall a witness for abuse of discretion.
United States v. Carter, 40 M.J. 102, 104 (C.M.A. 1994); United
States v. Rogers, 14 C.M.A. 570, 581, 34 C.M.R. 350, 361 (1964).
A military judge may not summarily deny a member's request to
recall witnesses for further questioning.  United States v.
Lampani, 14 M.J. 22, 26 (C.M.A. 1982).  In light of Article 46,
UCMJ, R.C.M. 921(b), M.R.E. 614(a), and Lampani, 14 M.J. 22,
some analysis on the record is required.  Rather than summarily
approving or denying such a request, a military judge must
consider factors such as "[d]ifficulty in obtaining witnesses

and concomitant delay; the materiality of the testimony that a witness could produce; the likelihood that the testimony sought might be . . . privilege[d]; and the objections of the parties to reopening the evidence" before ruling. Lampani, 14 M.J. at 26.

Here, while the military judge gave both parties the opportunity to object, arguably meeting the fourth Lampani factor, the military judge did not perform an analysis of the other three Lampani factors before summarily denying the member's request. Moreover, without knowing the nature of MSG H's questions, it was not possible to ascertain the materiality of the testimony that the recalled witnesses could have provided.[1]

Furthermore, the reasons the military judge stated for denying the member's request were unsupported by the relevant legal principles. The military judge denied the request to recall a medical doctor because they had been "permanently excused." The reason is not supported by law because an excused

---

[1] Although the military judge committed error by not analyzing three of the four Lampani factors, we recognize that Lampani does not provide an exhaustive list of factors to weigh. In a case such as this, it would have been appropriate for the military judge to have considered, among other things, whether the members had already been given an opportunity to ask the witnesses questions. The military judge may well have considered this factor, in light of the multiple questions already asked; however, the record does not indicate this analysis.

witness can be recalled. Lampani, 14 M.J. at 26. The military judge denied the request to recall Appellant's wife because the evidence had been "closed." This reason for denying the request is also unsupported by law. A plain reading of R.C.M. 921(b) confirms that witnesses can be recalled after presentation of evidence has concluded. R.C.M. 921(b) states that "[m]embers may request that the court-martial be reopened and that . . . additional evidence [be] introduced" following a military judge's discretionary ruling on the matter.

As a result, we conclude that the military judge's summary denial of the member's request was error. This was plain and obvious error in light of Lampani as well as Article 46, UCMJ, R.C.M. 921(b), and M.R.E 614(a).

II. Whether the error was materially prejudicial

During closing arguments, the defense counsel argued that Appellant's wife -- not Appellant -- caused K's injuries. On review, the Army Court of Criminal Appeals held that the military judge's error was not prejudicial, in part, because defense counsel did not object to the military judge's ruling and because any further questioning of Appellant's wife and Dr. Ellwood or another medical doctor -- Government witnesses -- would have likely elicited unfavorable testimony. Clifton, 2012 CCA LEXIS 139, at *5-*8, 2012 WL 1405727, at *2-*3.

We find it unnecessary to speculate whether defense counsel's response that he had no objection was for tactical reasons.[2] Because the military judge did not inquire into the nature of MSG H's proposed questions, we cannot, with certainty, determine whether the questions would have elicited testimony favorable or unfavorable to the defense. Moreover, there are viable reasons why defense counsel might wish to reexamine a favorable or an unfavorable witness, as well as sound reasons why he or she would not want to do so.

Nonetheless, there was no prejudice to Appellant. Keeping in mind that Appellant bore the burden to show prejudice in the absence of an objection at trial and in the context of a nonconstitutional error, Powell, 49 M.J. at 464-65, he failed to meet his burden for two reasons. First, Appellant's conviction is supported by overwhelming evidence. At trial, the Government introduced Appellant's written confession that he squeezed his daughter "pretty hard because I remember her arms lifting up on their own." In addition, both witnesses that the member wished

---

[2] In Lampani, this Court found that the defense counsel's silence with regard to a military judge's denial of a request to recall witnesses was intended to prevent the members from "hear[ing] . . . evidence that might fill gaps in the Government's evidence" on the charges. 14 M.J. at 27. As a result, this Court in Lampani concluded that the defense counsel was silent for tactical reasons and that the lost opportunity to recall witnesses was therefore nonprejudicial. Id.

to recall -- Appellant's wife and Dr. Ellwood -- had already testified extensively.

Second, the members had opportunity to ask questions, and did.  Thus, this is not a case where the purposes of Article 46, UCMJ, R.C.M. 921(b), and M.R.E. 614(a), were ignored or defeated.  To the contrary, the military judge exercised his discretion and allowed members to ask some, but not all, questions, and entertained some, but not all, requests to recall witnesses.  As a result, Appellant was not prejudiced by the absence of the members' opportunity to reasonably test and evaluate the evidence presented.

## DECISION

For the foregoing reasons, the decision of the United States Army Court of Criminal Appeals is affirmed.

<u>United States v. Clifton</u>, 12-0486/AR

ERDMANN, Judge (concurring in part and in the result):

I concur with the majority's analysis and resolution of the substantive issue and write only to express my view of the waiver issue.  The majority deals with waiver by holding that "we need not reach the issue of waiver because, even assuming that Appellant merely forfeited the issue, we conclude that he failed to carry his burden to show prejudice under a plain error analysis."  <u>United States v. Clifton</u>, __ M.J. __ (6) (C.A.A.F. 2013).  However, I believe the issue of waiver must be addressed because, if there was a waiver, there is nothing for an appellate court to consider.  <u>United States v. Campos</u>, 67 M.J. 330, 332 (C.A.A.F. 2009).  This inquiry begins with a determination as to whether the issue of waiver is properly before the court or whether the United States Army Court of Criminal Appeals's (CCA's) ruling constitutes the law of the case.  Here, because the Government raised the issue of waiver in its brief but did not certify the issue pursuant to C.A.A.F. R. 19(b)(3), I would hold that the issue is not properly before this court.

At court-martial the military judge denied a panel member's request to recall two witnesses.  Both parties affirmatively stated they had no objection to that ruling.  Clifton appealed to the CCA arguing that the military judge

erred in failing to recall the requested witnesses.  The
issue as to whether defense counsel waived the alleged
error was litigated before the CCA and that court held the
issue had not been waived.  United States v. Clifton, No.
ARMY 20091092, slip op. at 3 (A. Ct. Crim. App. Apr. 23,
2012) (citing United States v. Lampini, 14 M.J. 22 (C.M.A.
1982)).  The CCA subsequently held that while the military
judge erred, the error was harmless.  Id. at 5.

"'[W]aiver is the intentional relinquishment or
abandonment of a known right.'"  United States v. Sweeney,
70 M.J. 296, 303 (C.A.A.F. 2011) (quoting United States v.
Olano, 507 U.S. 725, 733 (1993)).  A waived issue is not
reviewed at all on appeal "'because a valid waiver leaves
no error for [this court] to correct on appeal.'"  United
States v. Campos, 67 M.J. 330, 332 (C.A.A.F. 2009) (quoting
United States v. Pappas, 409 F.3d 828, 830 (7th Cir. 2005).[1]

_____

[1] While Judge Stucky is correct to observe that "valid
waiver leaves no error for [this court] to correct on
appeal," Campos, 67 M.J. at 332, he fails to note that the
law of the case doctrine is itself a species of waiver.
United States v. Grooters, 39 M.J. 269, 273 (citing Morris
v. American National Can Corp., 988 F.2d 50, 52 (8th Cir.
1993)).  Therefore, the Government's failure to certify the
allegedly erroneous decision of the CCA concluding that the
error was not waived, was itself a waiver which "leaves no
error [of the CCA] for [this court] to correct on appeal,"
regardless of whether the issue was waived at trial.

It is therefore clear that whether an issue is "waived" by a party is a threshold issue that must be addressed before a court can consider the substantive issue being appealed.

Under the court's rules prior to 2007, the government was placed in a difficult situation. The accused had sixty days from the date of the CCA decision to file a petition at this court. The government had thirty days from the date of the CCA decision to certify an issue to this court.[2] The government would often see no need to certify an issue to this court in a case where it may have failed to prevail on every issue before the CCA, but ultimately prevailed in having the conviction affirmed. However, where an accused had filed a petition with this court which had been granted, by the time of the grant the government was often time-barred from certifying an issue, even though the non-appealed issue may have impacted the government's ability to respond to the accused's issue.

Because of these filing deadlines, this court would find itself faced with situations where an accused would file a petition asserting that the CCA erred and the

---

[2] The rule was amended in 2012 to provide the Judge Advocate General sixty days from the decision of the CCA to certify an issue for our review. U.S. Court of Appeals for the Armed Forces Proposed Rules Changes, 77 Fed. Reg. 23,226, 23,227 (Apr. 18, 2012); 71 M.J. 377 (C.A.A.F. 2012) (order announcing rule change to take effect Sept. 1, 2012).

government would often respond by arguing that another, non-appealed, portion of the CCA decision was error. However, "[u]nder the 'law of the case' doctrine, an unchallenged ruling 'constitutes the law of the case and binds the parties.'" United States v. Morris, 49 M.J. 227, 230 (C.A.A.F. 1998) (quoting Grooters, 39 M.J. at 273). As a result, we would spend a good deal of time entertaining arguments as to whether the "law of the case" doctrine should apply to bar litigation of the non-appealed issues or whether the government's issue was reasonably contained in the granted issue. See, e.g., United States v. Lewis, 63 M.J. 405, 412-13 (C.A.A.F. 2006); United States v. Parker, 62 M.J. 459, 465 (C.A.A.F. 2006); United States v. Doss, 57 M.J. 182, 185 (C.A.A.F. 2002).

In recognition of this situation, we amended C.A.A.F. R. 19(b)(3) in 2006 to give the government thirty days from the date that we granted an issue in which to certify an issue.[3] The amendment was an attempt to provide the government with ample time in which to determine whether, in light of the granted issue, there were any adverse issues at the CCA level which needed to be formally brought

---

[3] This provision was not amended by the 2012 changes, leaving the Judge Advocate General periods of sixty days from the CCA decision and thirty days from a grant of review in which to certify an issue.

4

before this court.  As the explanation stated in the

Federal Register:

> This amendment allows the Judge Advocate General
> to certify issues within 30 days of the granting
> of a petition for grant of review.  This
> opportunity to certify issues is believed to be
> appropriate because in some cases, the Judge
> Advocate General may be reluctant to certify
> issues and require review by this Court unless
> the Court will otherwise be reviewing the case at
> the appellant's request.  Once review is granted,
> the Judge Advocate General should be able to
> certify additional issues and thereby maximize
> the Court's opportunity to provide complete
> review.  It is not anticipated that this rule
> will produce a significant increase in the number
> of certified issues presented.  Also, the rule
> provides a mechanism whereby cases involving
> certified and granted issues will be consolidated
> for purposes of briefing.  This eliminates the
> need for separate briefing cycles for both sets
> of issues.

U.S. Court of Appeals for the Armed Forces Proposed Rules

Changes, 71 Fed. Reg. 64,251, 64,253-54 (Nov. 1, 2006).

That amendment became effective on January 1, 2007,

almost two years before this case was tried.  64 M.J. 358,

359 (C.A.A.F. 2006) (order announcing rule change).  The

amendment was intended to create a process whereby the

issues that this court was asked to decide were clearly set

forth by the parties, who could then provide the court with

their respective arguments.  That process eliminates

uncertainty and benefits not only the court and the parties

but the military justice system in general.  See generally

5

Yee v. City of Escondido, 503 U.S. 519, 536 (1992) ("Were we routinely to entertain questions not presented in the petition for certiorari, much of this efficiency [resulting from the petition system] would vanish, as parties who feared an inability to prevail on the question presented would be encouraged to fill their limited briefing space and argument time with discussion of issues other than the one on which certiorari was granted."); Soto v. ABX Air, Inc., No. 07-11035, 2010 U.S. Dist. LEXIS 85222, at *4, 2010 WL 3290982, at *2 (E.D. Mich. Aug. 19, 2010)[4] ("[Party's] attempt to raise this issue at oral argument, without briefing the issue, puts both the parties and the court at a disadvantage in deciding this issue."). Further, the process envisioned by the amendment promotes the purpose of Article 67, UCMJ, by requiring that appellate issues not raised by the accused are certified by the Judge Advocate General, rather than raised sua sponte in the course of litigation by appellate government counsel.  This case is a perfect example as to why the court adopted the amendment to C.A.A.F. R. 19(b)(3).

It was hoped that the amended rule would allow us to spend our time addressing the issues that the parties felt

---

[4] Set aside on other grounds by Soto v. ABX Air, Inc., No. 07-11035, 2010 U.S. Dist. LEXIS 117116, 2010 WL 4539454 (E.D. Mich. Nov. 3, 2010).

necessary to litigate rather than spending our time determining which issues were properly before the court. While some might fear that compliance with the rule would increase the number of government certifications, I agree with the court's comment in the Federal Register that it will not.[5]  I believe compliance with the rule will result in the government appropriately certifying only those issues which it believes are necessary to the resolution of a case already granted.  I suspect that from the government's perspective, it would also be better to ensure that the court will address those issues through the certification process, rather than gambling on whether the court will address an issue which was not appealed nor certified.  It will certainly provide a more efficient procedure for identifying and litigating issues before this court.

In light of the rule change, once an issue has been granted by this court, the government should certify any issue upon which it did not prevail at the CCA and which it deems necessary to litigate before this court.  Because the Government failed to certify the CCA's waiver decision,

---

[5] "It is not anticipated that this rule will produce a significant increase in the number of certified issues presented."  71 Fed. Reg. at 64,254.  This comment was prepared by the Rules Advisory Committee of the United States Court of Appeals for the Armed Forces.

that issue is not properly before the court.  As that would lead to the plain error analysis conducted by the majority, I join that portion of the majority's opinion.

STUCKY, Judge (concurring in the result):

In my opinion, the discussions of plain error at this Court and the United States Army Court of Criminal Appeals (CCA) are superfluous. This was a case where Appellant affirmatively waived his right to appeal the military judge's decision not to recall the requested witnesses.

After closing arguments and the military judge's instructions, one of the court members asked if it was "too late to recall two of the witnesses" because he had "two questions." When the military judge asked the names of the witnesses, the panel member stated:

> [MEM]: Either Dr. Ellwood or one of the other medical doctors.
>
> MJ: They've all been permanently excused.
>
> [MEM]: Okay.
>
> MJ: So, yes it would be.
>
> [MEM]: And Mrs. Clifton, has she been permanently excused?
>
> MJ: She has not been permanently excused. However, we have closed all of the evidence.
>
> [MEM]: Okay.
>
> MJ: Is there an objection to that, my answer to the panel members?
>
> TC: No, Your Honor.
>
> DC: No, Your Honor.

On appeal, Appellant asserted that the military judge had committed prejudicial error by refusing to recall the two witnesses requested by one of the court members.  Based in part on this Court's opinion in United States v. Lampani, 14 M.J. 22 (C.M.A. 1982), the CCA refused to apply waiver to this issue. United States v. Clifton, No. 20091092, 2012 CCA LEXIS 139, at *5, 2012 WL 1405727, at *2 (A. Ct. Crim. App. Apr. 23, 2012) (per curiam) (unpublished).

In Lampani, after deliberations began, the president of the court asked the military judge if it was still possible to question a witness.  The military judge answered that it was not possible because the witnesses had been excused and the panel had heard the arguments of the parties.  14 M.J. at 24–25. There was no defense objection to this instruction.  Id. at 25. This Court held that the military judge erred by failing to recall the witnesses, refusing to "equate [the defense counsel's] silence with a waiver," id. at 27, even though the defense counsel failed to ascertain which witness the court desired to question.

Here, unlike in Lampani, Appellant knew the identity of the witnesses the member wished to recall.  Appellant had an opportunity to decide whether he wanted those witnesses recalled and affirmatively declined to object to the military judge's decision not to recall them.  As both witnesses had testified

2

for the prosecution, and the defense counsel argued that one of those witnesses -- Appellant's wife -- was the only person who could have committed the offense, it is reasonable to infer that Appellant did not want to give either witness an additional opportunity to clear up any questions the members might have. Appellant intentionally waived a known right, which extinguished his right to raise this issue on appeal. United States v. Gladue, 67 M.J. 311, 314 (C.A.A.F. 2009).

Despite recognizing that an intentional waiver extinguishes an accused's right to raise the issue on appeal, Judge Erdmann states in his separate opinion that, because the Government failed to certify the CCA's ruling that waiver did not apply, the waiver issue is not properly before this Court. United States v. Clifton, __ M.J. __, __ (7-8) (C.A.A.F. 2013) (Erdmann, J., concurring in the result). I disagree. If an accused's "'valid waiver leaves no error for [this Court] to correct on appeal,'" United States v. Campos, 67 M.J. 330, 332 (C.A.A.F. 2009) (quoting United States v. Pappas, 409 F.3d 828, 830 (7th Cir. 2005)), whether the Government raises the issue is irrelevant.