UNITED STATES, Appellee,

v.

John E. PILKINGTON, Lance Corporal,
U.S. Marine Corps, Appellant.

No. 98–0512.
Crim.App. No. 96–2393.

U.S. Court of Appeals for
the Armed Forces.

Argued Dec. 17, 1998.

Decided Sept. 9, 1999.

COX, C.J., delivered the opinion of the Court, in which CRAWFORD and GIERKE, JJ., joined. SULLIVAN, J., filed a dissenting opinion, in which EFFRON, J., joined.

For Appellant: *Lieutenant Commander L.J. Lofton,* JAGC, USN (argued); *Lieutenant Jeffrey K. Van Nest,* JAGC, USNR.

For Appellee: *Major Clark R. Fleming,* USMC (argued); *Colonel K.M. Sandkuhler,* USMC, and *Commander D.H. Myers,* JAGC, USN (on brief); *Lieutenant Commander Nancy Blankenship Jones,* JAGC, USN.

Chief Judge COX delivered the opinion of the Court.

Appellant was convicted, pursuant to his pleas at a special court-martial, of conspiracy to maltreat subordinates, maltreatment of subordinates (5 specifications), making a false official statement, and assault (2 specifications). Arts. 81, 93, 107, and 128, Uniform Code of Military Justice, 10 USC §§ 881, 893, 907, and 928, respectively.

We are asked by appellant to decide whether the convening authority had the power to approve post-trial modifications to the original pretrial agreement. *See* 50 MJ 214 (1998).

Appellant's original agreement provided that, in exchange for his pleas, any adjudged punitive discharge would be suspended for a period of 12 months following the date of trial. Appellant received a sentence of a bad-conduct discharge, confinement for 150

days, forfeiture of $550.00 pay per month for 4 months, and reduction in grade to E–1. After trial, appellant approached the convening authority and, contrary to the advice of his defense counsel, offered to exchange his suspended bad-conduct discharge in return for a cap on his confinement for a period of 90 days. The convening authority agreed, and appellant received a bad-conduct discharge.

This is not the first time that this Court has considered post-trial agreements, or modifications to pretrial agreements made post-trial. Most recently, in *United States v. Dawson,* 51 MJ 411 (1999), we approved the use of an agreement that was reached post-trial, under the circumstances of that case. In *Dawson, supra* at 416, the accused was fully informed and approached the convening authority, with the assistance and advice of counsel, in order to negotiate an agreement to give up certain rights from her first court-martial in order to benefit from not being tried by a second court-martial for a separate offense. We held that, because an arms-length negotiation had been conducted, there was no reason not to affirm Dawson's decision to enter into the agreement.

■ Similarly, as with other cases involving negotiations between an accused and the convening authority, we look to whether the accused has been stripped of substantial rights, has been coerced into making a post-trial agreement, or has somehow otherwise been deprived of his due process rights. *See Dawson, supra,* 51 MJ at 416, citing *United States v. Rivera,* 46 MJ 52 (1997). There is no such deprivation under the circumstances of this case.

■ This case focuses on the question of whether disparate bargaining positions between appellant and the Government tainted the agreement. At the time that appellant entered into this agreement with the Government, he was already serving the beginning of his sentence to confinement. This Court is therefore concerned about whether his dealings with the Government were a product of a fully informed and considered decision or were a product of the coercive atmo-

sphere attendant to confinement. After all, appellant was already in the brig when he proposed his bargain. The question is whether appellant was operating of his own free will by proposing this new agreement while being confined.

· We answer this question in the affirmative.

Appellant argues that an unsuspended bad-conduct discharge is an increased punishment. Here, however, appellant had the advice and assistance of counsel, although appellant chose to ignore his advice on this matter. Moreover, appellant already knew that he had received a bad-conduct discharge and confinement for a period of 150 days. It was solely appellant's choice to approach the convening authority to bargain for less confinement. Appellant decided, after consulting with counsel, that spending 60 more days in the brig was more onerous than the bad-conduct discharge. That was his personal choice to make, and it is not for us to substitute our judgment on this personal matter in place of his. *See United States v. Acevedo,* 50 MJ 169 (1999).

Because appellant's counsel advised against such action, there is no issue of lack of counsel, or ineffective assistance of counsel, that might be a factor in whether appellant intelligently entered into this decision. *See United States v. Pilkington,* 48 MJ 523, 525 n. 2 (N.M.Ct.Crim.App.1998).

Appellant took it upon himself to enter into these negotiations. He received the benefit of his bargain. Regardless of the advisability of his decision, there is no legal error or deprivation of due process under these circumstances. Appellant may very well have believed, and still believe, that in his circumstances a bad-conduct discharge was not as detrimental as the adverse administrative discharge he may have received. Under these circumstances, it is not our role to second-guess appellant's personal choice as to what course of action was better for him. Appellant was not denied any of his substantial rights. *See* Art. 59(a), UCMJ, 10 USC § 859(a).

The decision of the United States Navy–Marine Corps Court of Criminal Appeals is affirmed.

SULLIVAN, Judge, with whom
EFFRON, Judge, joins (dissenting):

Judicial scrutiny of a pretrial agreement by a trial judge is well established in the military justice system. *United States v. Bartley*, 47 MJ 182, 186 (1997). Yet, today, the majority allows alteration of the pretrial agreement in this case by means of a post-trial modification without such judicial scrutiny. It admits that the voluntariness of appellant's post-trial agreement is essential; however, it assesses that voluntariness based only on the parties' arguments on appeal and the terms of the post-trial agreement itself. In effect, the majority ignores this Court's precedent mandating judicial scrutiny of pretrial agreements and the President's orders for such scrutiny under RCM 910(f)(1)–(4), Manual for Courts–Martial, United States (1995 ed.).[1] *United States v. Green*, 1 MJ 453 (CMA 1976); *United States v. King*, 3 MJ 458 (CMA 1977); *United States v. Dawson*, 10 MJ 142 (CMA 1981).

The convening authority was bound by the original pretrial agreement in this case. *Cf.* *Cooke v. Orser*, 12 MJ 335 (CMA 1982). The subsequent post-trial agreement authorized the convening authority, after appellant's court-martial, to alter his agreed-to-punishment. *See Waller v. Swift*, 30 MJ 139, 143 (CMA 1990). The majority opinion sanctions such an alteration, simply because appellant submitted a request to do so. Mutual assent of the parties alone, however, is not sufficient to render a pretrial agreement valid. *See generally Dawson*, 10 MJ 142.

In sum, appellant's pretrial agreement was undermined and turned into an "empty ritual" because the post-trial agreement supplanted it. *See United States v. Rivera*, 46 MJ 52, 54 (1997), citing *United States v. Allen*, 8 USCMA 504, 25 CMR 8 (1957). This Court has no authenticated record on which to judge the voluntariness, scope, and legality of the later agreement. There is no value to judicial scrutiny of a pretrial agreement at trial when you can evade such scrutiny by means of an unsupervised post-trial agreement. Accordingly, I would remand this case for a *DuBay*[2] hearing to determine the providence of this agreement under *United States v. Green* and *United States v. King*, both *supra*.

---

1. Appellant's case stands in contrast to the recently decided *United States v. Dawson*, 51 MJ 411 (CMA 1999), where this Court sanctioned the convening authority's agreement with the accused to withdraw a pending charge in a second court-martial in exchange for the accused's waiver of any complaint concerning post-apprehension confinement in connection with the pending charge and the vacation proceeding in connection with the initial court-martial. That agreement was deemed "collateral to the court-martial and within the command structure." *Id.* at 414.

2. *United States v. DuBay*, 17 USCMA 147, 37 CMR 411 (1967).