**UNITED STATES**

v.

**Christopher E. PARKER II, Private (E–1), U.S. Marine Corps.**

**NMCCA 200102191.**

U.S. Navy–Marine Corps Court of Criminal Appeals.

Sentence Adjudged 18 Jan. 2001.

Decided 19 Aug. 2004.

---

LtCol Dwight H. Sullivan, USMCR, Appellate Defense Counsel.

Capt Rolando R. Sanchez, USMC, Appellate Defense Counsel.

LT Frank L. Gatto, JAGC, USNR, Appellate Government Counsel.

Before PRICE, Senior Judge, SUSZAN, and REDCLIFF, Appellate Military Judges.

SUSZAN, Judge:

The appellant was charged with unauthorized absence and missing movement by design in violation of Articles 86 and 87, Uniform Code of Military Justice, 10 U.S.C. §§ 886 and 887. Pursuant to a pretrial agreement, he pled guilty to unauthorized absence and, by exceptions and substitutions, to missing movement by neglect. A military judge, sitting as a special court-martial, convicted the appellant, in accordance with his pleas, of the unauthorized absence, but rejected his plea to missing movement by neglect. The convening authority then withdrew from the pretrial agreement and the Government proceeded with proof on the missing movement by design offense. After trial by military judge alone, the appellant was convicted of missing movement by design. The adjudged sentence included confinement for five months and a bad-conduct discharge. The pretrial agreement would have required suspending the bad-conduct discharge and all confinement in excess of 30 days. The convening authority approved the adjudged sentence, but remitted confinement in excess of 44 days.

We have carefully considered the record of trial, the appellant's sole assignment of error contending that the military judge improperly rejected the appellant's plea of guilty to missing movement by neglect, the Government's response, and the appellant's reply. We conclude that the military judge erred by rejecting the appellant's plea of guilty to missing movement by neglect. With this exception, the findings are correct in law and fact, and no error materially prejudicial to the substantial rights of the appellant occurred. Arts. 59(a) and 66(c), UCMJ, 10 U.S.C. §§ 859(a) and 866(c). We reassess the sentence in our decretal paragraph.

### Providence Inquiry Into Missing Movement Guilty Plea

The appellant contends that the military judge abused his discretion by rejecting his guilty plea to missing movement by neglect, in violation of Article 87, UCMJ. Specifically, the appellant asserts that the answers he gave during the providence inquiry provided an ample basis for the military judge to accept his guilty plea to missing movement through neglect. We agree.

During the providence inquiry, the military judge asked the appellant why he believed he was guilty of the offense of missing movement through neglect. In response, the appellant testified that he knew his unit was going to Okinawa and he did not return from his unauthorized absence in time to deploy with it. After further questioning by the military judge, the appellant stated that he heard about the prospective movement through one of his noncommissioned officers (NCOs) and answered in the affirmative the military judge's question regarding whether the deployment was common knowledge within the battalion. The appellant answered additional questions acknowledging he knew his unit was scheduled to make the movement to Okinawa in early August 2000 for a period of six months. Nonetheless, the military judge rejected the appellant's plea after the following exchange:

> MJ: And you knew of the movement, the place and time because your NCOs had told you, and that was also common knowledge in the battalion?
>
> ACC: No, sir. I heard it through—they were talking about it, sir. I just over heard it, sir.
>
> MJ: Well, how did you know they were accurate? Lots of people talk about stuff all the time and never—so you just heard some rumors that you all might be going to Okinawa?
>
> ACC: Yes, sir.

> MJ: Okay. I'm not going to take his plea.
> *Id.*

We start with the premise that the appellant has the right to offer a guilty plea, and to do so pursuant to a pretrial agreement. Art. 45, UCMJ, 10 U.S.C. § 845; RULES FOR COURTS-MARTIAL 705(b)(1) and 910(a)(1), MANUAL FOR COURTS-MARTIAL, UNITED STATES (2000 ed.). In this regard we are mindful that "a provident plea of guilty is one that is knowingly, intelligently, and consciously entered and is factually accurate and legally consistent." *United States v. Watkins,* 35 M.J. 709, 712 (N.M.C.M.R.1992)(citing *United States v. Sanders,* 33 M.J. 1026 (N.M.C.M.R.1991)). Furthermore, "the accused must be convinced of, and able to describe all the facts necessary to establish guilt." R.C.M. 910(e), Discussion. A factual basis is required for a military judge to accept an accused's guilty plea and the military judge is required to question an accused to establish this factual basis. *United States v. Chambers,* 12 M.J. 443, 444 (C.M.A.1982); *United States v. Care,* 40 C.M.R. 247, 1969 WL 6059 (C.M.A.1969); *United States v. Williamson,* 42 M.J. 613, 615 (N.M.Ct.Crim. App.1995).

The crux of the dispute in this case is whether the appellant provided a sufficient factual basis during the providence inquiry for the military judge to conclude that the appellant had actual knowledge of the scheduled movement of his unit, a required element of proof under Article 87, UCMJ. We believe the appellant did.

The responsibility of the military judge to ensure a guilty plea is provident is clear. We understand that there may be a natural inclination on the part of the military judge to err on the side of caution on the matter. We believe that to be the case here, where the questioning by the military judge did not focus on the appellant's knowledge of his unit's movement, so much as it did on the reliability and source of that knowledge. It is clear the military judge questioned the credibility of information the appellant relied on for notice of the prospective movement.[1]

---

1. The fact that the information was accurate and that the unit did deploy in early August of 2000 is not in dispute.

The military judge questioned the credibility of the information because it was not conveyed directly or officially to the appellant; rather, it was overheard by the appellant. It was at this point the military judge rejected the appellant's plea without further inquiry and without giving the appellant an opportunity to consult with his counsel.

In cutting off further inquiry, the military judge based his rejection of the guilty plea on his belief the appellant had used potentially unreliable information in reaching the conclusion that his unit would deploy in August 2000. This was a misapplication or misunderstanding of the law. At issue is not the reliability or source of the information conveying notice of the movement, but rather the appellant's actual knowledge of the movement. Art. 87, UCMJ; MANUAL FOR COURTS-MARTIAL, UNITED STATES, (2000 ed.), Part IV, ¶ 11(b)(2). Reliability of the information would only be an issue if there were some doubt that the appellant had actual knowledge. Based on his statements to the military judge, we find his admissions sufficient to manifest actual knowledge of his unit's prospective movement.

To reiterate, the appellant answered the military judge's questions by stating that he knew his unit was scheduled to make the movement to Okinawa in early August 2000, satisfying the requirement that he knew of the prospective movement of the unit under Article 87, UCMJ. In *United States v. Penister*, 25 M.J. 148 (C.M.A.1987), our superior court held the rejection of a provident guilty plea due to a misapplication or misunderstanding of the law to be error. Here, as in *Penister*, the military judge's rejection of the appellant's provident guilty plea was error.

### Convening Authority's Withdrawal From the Pretrial Agreement

■ In *Penister*, as in the appellant's case, the accused entered into a pretrial agreement with the convening authority and agreed to plead guilty. *Id.* Having found that the military judge committed error in rejecting the accused's plea, our superior court held that the military judge's erroneous rejection of the guilty plea was not a "failure

by the accused" to fulfill any material promise or condition in the agreement; therefore, the convening authority was not at liberty to withdraw from the pretrial agreement. *Id.* at 152–53.

Withdrawal from a pretrial agreement by the convening authority is limited by the terms of R.C.M. 705(d)(4)(B), which states in pertinent part:

The convening authority may withdraw from a pretrial agreement at any time before the accused begins performance of promises contained in the agreement, upon the failure by the accused to fulfill any material promise or condition in the agreement, when inquiry by the military judge discloses a disagreement as to a material term in the agreement, or if findings are set aside because a plea of guilty entered pursuant to the agreement is held improvident on appellate review.

Here the appellant began the performance of his promise to plead guilty and only the military judge's rejection of the plea prevented fulfillment of this condition of the pretrial agreement. Having found the military judge's erroneous action in rejecting the guilty plea to be based on a misapplication or misunderstanding of the law, we conclude that the provisions of R.C.M. 705(d)(4)(B) would not permit withdrawal from the pretrial agreement by the convening authority. Without more, the pretrial agreement remained in effect and the convening authority was bound by its terms to suspend the bad-conduct discharge and confinement in excess of 30 days. *Penister*, 25 M.J. at 153.

### Accused's Post–Trial Withdrawal from a Provision of the Pretrial Agreement

■ Withdrawal from a pretrial agreement by the accused is governed by R.C.M. 705(d)(4)(A), which permits "[t]he accused [to] withdraw from a pretrial agreement at any time ..." [2] Here, we must review the post-trial processing of the case.

After trial, the trial defense counsel submitted a clemency request on behalf of the appellant. Clemency Letter of 21 Jan 2001.

---

2. There are restrictions on when an accused may withdraw a plea of guilty or a confessional stipu-

lation entered pursuant to a pretrial agreement," but those restrictions are inapplicable here.

In the letter, trial defense counsel makes reference to the terms of the original pretrial agreement and states, "[a]fter consulting with Pvt Parker, he does NOT desire his Bad Conduct Discharge [(BCD)] be suspended, but would request that his confinement in excess of 30 days be suspended." *Id.* The request not to suspend the BCD, while submitted with the request to suspend confinement over 30 days, was not conditioned on a cap to the confinement. *Id.* On 2 March 2001, the convening authority directed the appellant's release from confinement, and the remission of all post-trial confinement in excess of time served as of 5 March 2001. Convening Authority's Letter of 2 Mar 2001. The clemency letter was later submitted as an enclosure to trial defense counsel's reply to the staff judge advocate's recommendation (SJAR) in the case. Trial Defense Counsel ltr of 6 Aug 2001. In reply to the SJAR, and after the appellant had been released from confinement, the trial defense counsel reiterated that the appellant did not desire suspension of his BCD. *Id.* Both the clemency letter of 21 January 2001 and the trial defense counsel letter of 06 August 2001 were enclosures to the Addendum to the SJAR of 5 September 2001 and considered by the convening authority prior to his action of 25 September 2001. Special Court–Martial Order and Action Number 246–01 of 25 Sep 2001 at 2.

Suspension of the punitive discharge was a term of the pretrial agreement. Appellate Exhibit II. The appellant's specific request that the convening authority not suspend the BCD directly contravened this provision of the pretrial agreement. We hold that the appellant's request to contravene this provision of the pretrial agreement was tantamount to *withdrawal from that specific provision of the original pretrial agreement,* or in the alternative, at least constituted a request to modify that term of the agreement.

Here, the situation is akin to the one addressed by our superior court in *United States v. Pilkington,* 51 M.J. 415 (C.A.A.F. 1999). In *Pilkington,* the court was asked to decide whether the convening authority had the power to approve post-trial modifications to the original pretrial agreement. There, as in the appellant's case, the original agreement called for suspension of the punitive discharge. Further, as in the appellant's case, the accused approached the convening authority after consulting with trial defense counsel, and requested that the discharge not be suspended. In *Pilkington,* the accused made the request seeking a cap on confinement which our superior court considered a bargained for exchange. The court did not delve into the advisability of the accused's decision, but rather looked to whether the accused was operating of his own free will by making this proposal. Having found that to be the case, our superior court concluded there was no legal error or deprivation of due process associated with the modification of the pretrial agreement. *Id.* at 416.

■ Here, we find the appellant's request, made with the benefit of advice from trial defense counsel, to be the product of a fully informed and considered decision.[3] As such, the convening authority had the power, per the appellant's withdrawal from or modification of the provision requiring suspension of the bad-conduct discharge in the original pretrial agreement to approve the bad-conduct discharge without suspension. We base this holding on the fact that while pretrial agreements are not subject to all the rules of conventional contract law, there is no doubt that one party to an agreement cannot avail himself of a default by the other party which he himself has caused. *Penister,* 25 M.J. at 153. In other words, the appellant cannot on one hand ask the convening authority to approve an unsuspended bad-conduct discharge, contrary to the terms of the pretrial agreement, and on the other hand later be allowed to successfully challenge, absent some showing of prejudice, the very action he requested. Therefore, the appellant was not denied any of his substantial rights. Arts. 59(a), 66(c), UCMJ.

---

**3.** We note that during the presentencing phase of the trial, the appellant made an unsworn statement in which he requested a bad-conduct discharge, and advised the military judge that he had considered the advice of his attorney in making the request. Record at 72.

## Conclusion

Accordingly, only so much of the findings of guilt as to the lesser offense of missing movement through neglect in the Specification under Charge II, and Charge II, and the remaining findings of guilty under Charge I are affirmed. The sentence is reassessed and only so much of the sentence as provides for a bad-conduct discharge and confinement for 30 days is affirmed.

Senior Judge PRICE concurs.

REDCLIFF, Judge (dissenting):

Finding no abuse of discretion by the military judge in rejecting the appellant's plea of guilty to missing movement by neglect, I would affirm the findings of guilty and the adjudged sentence. In my view, the record supports the military judge's decision. Accordingly, I must respectfully dissent.

## Providence Inquiry Into Missing Movement Guilty Plea

Holding that the military judge abused his discretion and misapplied the law by questioning the quality of the information relied upon by the appellant for notice of his unit's movement, the majority opinion finds that the answers the appellant gave during the providence inquiry provided a sufficient basis for the military judge to accept his guilty plea to missing movement. I disagree.

During the providence inquiry, and after thoroughly explaining the relevant elements and definitions, the military judge asked the appellant why he believed he was guilty of the offense of missing movement. In response, the appellant initially stated that he knew his unit was going to Okinawa and he did not return from his unauthorized absence in time to deploy with it. Record at 19–20. After further questioning by the military judge, the appellant stated that he heard about the prospective movement through one of his noncommissioned officers (NCOs), but then told the military judge that he simply overheard some unidentified NCOs talking about the deployment. *Id.* at 21. Upon further questioning, the appellant conceded that he just heard rumors that his unit might be going to Okinawa. *Id.*

Based on the appellant's equivocal statements, the military judge stated his intent to reject the guilty plea. The trial defense counsel did not object to the military judge's announced intention. Nor did the trial defense counsel request time to consult further with the appellant to clarify the factual basis for the guilty plea. Moreover, trial defense counsel made no effort to dissuade the military judge or to present additional information reflecting the appellant's actual knowledge of the movement. Government counsel remained silent regarding the military judge's intention to reject the appellant's plea. Thus, the military judge rejected the appellant's guilty plea, entered a plea of not guilty on his behalf, and conducted a bench trial on this offense.

Generally, a military judge "may not arbitrarily reject a guilty plea." *United States v. Penister*, 25 M.J. 148, 152 (C.M.A.1987). However, "[a] provident plea of guilty is one that is knowingly, intelligently, and consciously entered and is factually accurate and legally consistent." *United States v. Watkins*, 35 M.J. 709, 712 (N.M.C.M.R.1992). Furthermore, "the accused must be convinced of, and able to describe all the facts necessary to establish guilt." RULE FOR COURTS-MARTIAL 910(e), MANUAL FOR COURTS-MARTIAL, UNITED STATES (2000 ed.), Discussion. A factual basis is required for a military judge to accept an accused's guilty plea. *United States v. Chambers*, 12 M.J. 443, 444 (C.M.A.1982); *United States v. Williamson*, 42 M.J. 613, 615 (N.M.Ct.Crim.App. 1995). Moreover, a military judge is required to question an accused to establish the factual basis for a plea of guilty. *United States v. Care*, 40 C.M.R. 247, 1969 WL 6059 (C.M.A.1969).

Our superior court has held that when addressing issues regarding the providence of guilty pleas, our inquiry is not to end "at the edge of the providence inquiry but, rather, [we shall look] to the entire record to determine whether the dictates of Article 45, R.C.M. 910, and *Care* and its progeny have been met." *United States v. Jordan*, 57 M.J. 236, 239 (C.A.A.F.2002). It is unsettled whether such an inquiry is appropriate when reviewing the rejection of a plea deemed

improvident. In considering only the providence inquiry, or in conjunction with the whole record, I find ample support for the military judge's decision to reject the appellant's plea of guilty to missing movement by neglect.[1]

The pivotal issue in this case is whether the appellant provided a sufficient factual basis during the providence inquiry for the military judge to conclude that the appellant had actual knowledge of the movement of his unit, a required element of proof under Article 87, UCMJ. Based on his statements to the military judge, consistent with the appellant's further testimony in his defense on the merits, I find the appellant's admissions insufficient to manifest actual knowledge of the unit's prospective movement. I rest this conclusion on the equivocal statements made by the appellant during the providence inquiry that the unit's movement was the subject of rumor, mirrored by his testimony on the merits that no one in his unit ever told him that the unit was deploying to Okinawa. According to the appellant, "It was just — it was, like, common knowledge through the battery and I just got it from some of the people I hung out with that we were going sometime." Record at 61. Under cross-examination, the appellant further asserted that he had no knowledge that his unit was deploying and that neither of his section leaders told him they would be deploying for Okinawa in August. *Id.* at 62. Finally, reflecting his lack of knowledge, the appellant testified that he thought he'd be at one base throughout his enlistment and that he was told by his recruiter that while it was possible he might have to deploy, he probably would not have to do so. *Id.* at 60.

As noted by our superior court, substantial deference should be accorded military judges in accepting an accused service-member's guilty plea. In *Penister*, relied upon by the majority opinion, the United States Court of Appeals of the Armed Forces recognized that "a judge may err on the side caution and not accept a guilty plea when there is **any** question as to its providence. *Penister*, 25 M.J.

at 152 (emphasis added). While the *Penister* court ultimately held that the military judge acted improperly in rejecting *Penister's* guilty plea, the facts in *Penister* are distinguishable from the appellant's case. Namely, in *Penister*, it was the government counsel who initially challenged the guilty plea, ostensibly to undercut the pretrial agreement. Here, it was the military judge, *sua sponte*, who questioned the providence of the appellant's guilty plea.

In my view, the military judge did not abuse his discretion by rejecting this appellant's guilty plea. As noted by our superior court, the "abuse of discretion" standard is a strict one, defined as follows:

> To reverse for "an abuse of discretion involves far more than a difference in ... opinion.... The challenged action must ... be found to be 'arbitrary, fanciful, clearly unreasonable,' or 'clearly erroneous' in order to be invalidated on appeal."

*United States v. Travers*, 25 M.J. 61, 62 (C.M.A.1987)(quoting *United States v. Glenn*, 473 F.2d 191, 196 (D.C.Cir.1972). Simply put, "... when judicial action is taken in a discretionary matter, such action cannot be set aside by a reviewing court unless it has a definite and firm conviction that the court below committed a clear error of judgment in the conclusion it reached upon a weighing of the relevant factors." *United States v. Houser*, 36 M.J. 392, 397 (C.M.A.1993)(quoting Magruder, J., THE NEW YORK LAW JOURNAL at 4, col. 2 (March 1, 1962), *quoted in* Quote I and II: A DICTIONARY OF MEMORABLE LEGAL QUOTATIONS 2 (1988)). Although the military judge might have solicited further probing questions from both the government counsel and the trial defense counsel to resolve concerns about the providence of the appellant's pleas, he was not required to do so. And furthermore, such efforts would have likely proven fruitless given the appellant's testimony on the merits. During the providence inquiry, the appellant clearly "hedged" his responses to the military judge. Later, the appellant undertook significant effort to refute the government's proof that he

---

1. The appellant has not challenged the factual sufficiency of the Government's evidence against him on the merits, and the record contains com-

pelling proof that he missed movement by design, despite his assertion on the merits that he did not know about the movement.

was present when "word" was passed about the unit's prospective movement. Thus, I find it difficult to conclude, as the majority does, that the military judge committed clear error here.

If military judges are to act as something more than "rubber stamps" in conducting their providence inquiries, we ought to afford them considerable deference in conducting their inquiry and rendering judgment. Oftentimes, a person's facial gestures, body posture, or voice inflection may give a military judge pause to question the validity of that accused's statements.[2] Until a military judge is personally satisfied with the factual basis for an accused's guilty plea, such a plea should be rejected, not only for the benefit of a recalcitrant accused, but also for the integrity of the military justice system. In evaluating the appellant's providence inquiry in this instance, I firmly believe the military judge properly exercised his discretion and did not arbitrarily reject the appellant's proffered guilty plea.

As I would not sustain a conviction for violation of Article 87 based solely on rumor, innuendo, or impression drawn from reliance on "some people the appellant hung out with," I cannot agree that the military judge abused his authority in rejecting the appellant's plea of guilty on the same basis.[3]

---

2. Although such observations should be expressed on the record to aid in review of an otherwise inanimate record of trial, failure to do so is not error.

3. Finding no abuse of discretion by the military judge in rejecting the appellant's guilty plea to missing movement, I express no view regarding the majority's enforcement of the pretrial agreement or in its conclusion that the appellant effectively withdrew from one of its provisions.