UNITED STATES, Appellee

v.

Christopher E. PARKER, Private
U.S. Marine Corps, Appellant

No. 05-0072

Crim. App. No. 200102191

United States Court of Appeals for the Armed Forces

Argued October 11, 2005

Decided March 14, 2006

EFFRON, J., delivered the opinion of the Court, in which
CRAWFORD and BAKER, JJ., joined.  ERDMANN, J., filed a
dissenting opinion, in which GIERKE, C.J., joined.


Counsel


For Appellant:  Captain Rolando R. Sanchez, USMC (argued).


For Appellee:  Lieutenant TyQuili R. Booker, JAGC, USN (argued);
Commander Charles N. Purnell, JAGC, USN, and Major Kevin C.
Harris, USMC (on brief); Colonel William K. Lietzau, USMC.


Military Judge:  Kenneth B. Martin


THIS OPINION IS SUBJECT TO REVISION BEFORE FINAL PUBLICATION.

Judge EFFRON delivered the opinion of the Court.

Appellant was charged with unauthorized absence and missing movement by design in violation of Articles 86 and 87, Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 886, 887 (2000). At a special court-martial composed of a military judge sitting alone, Appellant entered pleas of guilty to unauthorized absence and missing movement by neglect. The military judge accepted the plea to the unauthorized absence charge, but he determined that the plea to the missing movement charge was improvident. Appellant subsequently contested the missing movement charge. After considering evidence from both parties, the military judge found Appellant guilty of missing movement by design. Pursuant to Appellant's earlier plea, the military judge also found Appellant guilty of unauthorized absence. In the findings, the military judge made minor modifications that are not pertinent to the present appeal. The military judge sentenced Appellant to a bad-conduct discharge and confinement for five months.

The convening authority approved the sentence and remitted confinement in excess of forty-four days. The United States Navy-Marine Corps Court of Criminal Appeals affirmed the finding of unauthorized absence, reduced the finding of missing movement through design to missing movement through neglect, and affirmed a sentence of a bad-conduct discharge and thirty days of

confinement.  United States v. Parker, 60 M.J. 666 (N-M. Ct.

Crim. App. 2004).

On appellant's petition, we granted review of the following

issue:

> WHETHER THE LOWER COURT ERRED WHEN IT
> REFUSED TO ENFORCE THE PRETRIAL AGREEMENT'S
> PROVISION TO SUSPEND THE BAD-CONDUCT
> DISCHARGE.

For the reasons discussed below, we affirm.


## I.   BACKGROUND

### A. PLEA INQUIRIES AND PRETRIAL AGREEMENTS

Under United States v. Care, 18 C.M.A. 535, 541, 40 C.M.R.

247, 253 (1969), and its progeny, there are specific

requirements governing guilty pleas in the military justice

system.  Prior to accepting a guilty plea, the military judge

must provide detailed advice to the accused and ensure that the

accused understands the meaning and effect of the plea.  Rule

for Courts-Martial (R.C.M.) 910(c).  The military judge may not

accept a plea of guilty without addressing the accused

personally and determining that the plea is voluntary.  R.C.M.

910(d).  In addition, the military judge may not accept a plea

of guilty without questioning the accused and ensuring that

there is a factual basis for the plea.  Id.  As noted in the

R.C.M. 910(d) Discussion, "the accused must admit every element

of the offense(s) to which the accused pleaded guilty."  The
R.C.M. 910(d) Discussion also states:  "The accused need not
describe from personal recollection all the circumstances
necessary to establish a factual basis for the plea.
Nevertheless the accused must be convinced of, and be able to
describe all the facts necessary to establish guilt."  The
decision of a military judge to reject a guilty plea will not be
overturned unless it is arbitrary.  United States v. Penister,
25 M.J. 148, 152 (C.M.A. 1987) ("[A] judge may err on the side
of caution and not accept a guilty plea when there is any
question as to its providence.").

An accused and the convening authority may enter into a
pretrial agreement, subject to R.C.M. 705.  Under the rule, for
example, an accused may agree to plead guilty to one or more
charges and specifications, and the convening authority may
agree to limit, suspend, or mitigate all or portions of the
sentence.  See, e.g., R.C.M. 705(b)(1); R.C.M. 705(b)(2)(E);
R.C.M. 705(b)(2)(E) Discussion.  When there is a plea agreement,
the military judge must ensure that the accused understands the
agreement, that any unclear terms are clarified, and that all
parties agree to the terms of the agreement.  R.C.M. 910(f);
R.C.M. 910(h)(3); R.C.M. 910(f)(4) Discussion.

An accused may withdraw from a pretrial agreement at any
time, subject to the rules governing guilty pleas and

4

confessional stipulations.  <u>See</u> R.C.M. 705(d)(4)(A).  After trial, and prior to the convening authority's action, the accused may initiate a modification of the pretrial agreement, so long as the accused has the assistance of counsel, the modification is the product of a fully informed and considered decision, and it is not the product of a coercive atmosphere.  <u>United States v. Pilkington</u>, 51 M.J. 415, 416 (C.A.A.F. 1999).

The convening authority may withdraw from a pretrial agreement under four specified circumstances:  (1) "at any time before the accused begins performance of promises contained in the agreement"; (2) "upon the failure by the accused to fulfill any material promise or condition in the agreement"; (3) "when inquiry by the military judge discloses a disagreement as to a material term in the agreement"; and (4) "if findings are set aside because a plea of guilty entered pursuant to the agreement is held improvident on appellate review."  R.C.M. 705(d)(4)(B).

### B. THE PRETRIAL AGREEMENT BETWEEN APPELLANT AND THE CONVENING AUTHORITY

The charged offenses involved two related matters:  (1) Appellant's unauthorized absence of 134 days; and (2) Appellant's missing the deployment of his unit to Okinawa by "design" on a specified day within that period.  Appellant and the convening authority entered into a pretrial agreement that expressly provided that "[a]ll provisions of this Agreement are

material."  Appellant agreed to plead guilty to the charged unauthorized absence and to a lesser offense of missing movement through neglect.  In return, the convening authority agreed to: (1) suspend a bad-conduct discharge, if adjudged; and (2) suspend any confinement in excess of thirty days, if adjudged.  In the agreement, Appellant expressly stated:  "I understand that if my guilty pleas do not remain in effect for any reason through the announcement of the sentence, then the convening authority may withdraw from this Agreement."

## C. THE PROVIDENCE INQUIRY

Consistent with the pretrial agreement, Appellant entered pleas of guilty at trial to the unauthorized absence charge and to the offense of missing movement by neglect.  The military judge explained the plea inquiry process to Appellant, specifically noting:  "If at any time you become confused or have any questions, stop me and I'll give you the opportunity to consult with your attorney."

The military judge conducted an inquiry into the providence of the pleas, ultimately concluding that Appellant's plea was provident as to the unauthorized absence offense.  The inquiry into unauthorized absence and Appellant's conviction for that offense are not at issue in the present appeal.

With respect to missing movement by neglect, the military judge provided the following description of the elements:

> Number one, that you were required in the
> course of duty to move with 3d Battalion,
> 11th Marines, 1st Marine Division.
>
> The second element is that you knew of the
> prospective movement of the unit.
>
> The third element is that on or about the
> 7th of August 2000, at Marine Air Ground
> Task Force Training Command, Twentynine
> Palms, California, you missed the movement
> of that unit.
>
> And the fourth element is that you missed
> the movement through neglect.

See Manual for Courts-Martial, United States pt. IV, para. 11.b

(2005 ed.). In addition, the military judge offered the

following explanation of certain terms used in the elements:

> The word "movement" as used in this
> specification means a major transfer of a
> unit involving a substantial distance and
> period of time. The word does not include
> practice marches of a short duration and
> distance, nor minor changes in the location
> of a unit.
>
> In order to plead guilty to this offense,
> you must have actually known of the
> prospective movement that was missed.
> Knowledge of the exact hour, even the exact
> date of the scheduled movement is not
> required. It is sufficient if the
> approximate date was known by you as long as
> there is a causal connection between your
> conduct and the missing of the scheduled
> movement.
>
> The "term neglect" [sic] means the omission
> to take such measures as are appropriate
> under the circumstances to assure presence
> with an aircraft, unit, or ship at the time
> of the scheduled movement, or doing some act
> without giving attention to its probable

> consequences in connection with the
> prospective movement to such a distance as
> would make it likely that the one could not
> return in time for the movement.

See id. para. 11.c.

Appellant responded affirmatively to the military judge's general inquiry as to whether the elements described what he "did on that occasion." In response to the military judge's question about knowledge of the movement, Appellant acknowledged that he had heard from his superior noncommissioned officers that the unit was going to Okinawa in early August 2000. The military judge then sought to determine whether the impending movement was the subject of official orders communicated to Appellant or whether he had simply heard barracks rumors:

> MJ: And you knew of the movement, the place
> and time because your NCOs [noncommissioned
> officers] had told you, and that was also
> common knowledge in the battalion?
>
> ACC: No, sir. I heard it through -- they
> were talking about it, sir. I just over
> heard [sic] it, sir.
>
> MJ: Well, how did you know they were
> accurate? Lots of people talk about stuff
> all the time and never -- so you just heard
> some rumors that you all might be going to
> Okinawa?
>
> ACC: Yes, sir.

Following Appellant's acknowledgement that his knowledge of a possible deployment was the result of "rumors," the military

8

judge stated: "Okay. I'm not going to take his plea." After a brief, thirteen-minute recess, the military judge asked if defense counsel needed additional time in order to consult with Appellant. Defense counsel then requested a continuance, which the military judge granted. Defense counsel offered no objection to the military judge's plea inquiry or his decision to not accept the plea.

During the continuance, Appellant attempted to enter into a new pretrial agreement with the convening authority based upon the unauthorized absence charge, but the convening authority declined to do so. When the court-martial convened a month later, the defense did not ask the military judge to reopen the providence inquiry, nor did the defense otherwise challenge the military judge's ruling on providence. In response to the military judge's inquiry about motions, the defense replied that he had none.

The military judge asked Appellant whether he understood that the convening authority was no longer bound by the plea agreement in view of the prior rejection of the plea. Appellant responded in the affirmative. After noting that Appellant's request for a bench trial was based, at least in part, on the pretrial agreement that was no longer in effect, the military judge offered Appellant the opportunity to revisit his forum

choice.  Appellant reaffirmed his desire for a judge-alone proceeding.

### D. MISSING MOVEMENT -- THE CONTESTED CHARGE

The military judge obtained the agreement of both parties that Appellant's provident plea to the absence offense would establish one of the four elements of missing movement -- that he was not present when his unit deployed.  The military judge emphasized that the Government would bear the burden of proving the remaining elements -- that he was required to move with his unit, that he knew of the prospective movement, and that he missed the movement by design or neglect.

Trial on the merits focused primarily on the same concerns that had been raised in the providence inquiry regarding Appellant's awareness of a deployment order.  The prosecution introduced the testimony of personnel in Appellant's chain of command who described the information regarding deployment to Okinawa that was conveyed to the unit, as well as evidence that Appellant was present for at least some of those briefings.

Defense counsel, in his opening statement, expressly set forth the defense position -- that Appellant "did not have actual knowledge that the unit was deploying to Okinawa in August."  Appellant, who was the primary witness in his own behalf, testified that he had no recollection of being advised of a deployment to Okinawa.  He specifically denied that anyone

in an official capacity had communicated to him that the unit was going to Okinawa, including the prosecution's witnesses from his chain of command.

Defense counsel, in his closing statement, contended that the discussions within the unit amounted to nothing more than general information about potential deployments, and that Appellant "did not have actual knowledge" of a specific deployment.  The prosecution argued in rebuttal that the military judge, as factfinder, could infer actual knowledge from circumstantial evidence, particularly the information that had been made available to the unit.  After making minor changes in the wording of the charges, the military judge entered findings of guilty to the contested charge of missing movement by design, and of the uncontested charge of unauthorized absence.

### E. SENTENCING -- APPELLANT'S FIRST REQUEST FOR A BAD-CONDUCT DISCHARGE

During the sentencing proceedings, Appellant made a brief unsworn statement in which he recounted his problems in high school and in the service.  After acknowledging his problems, he said:  "I kept on getting in trouble no matter how hard I tried. So I took it into my own hands and went UA [unauthorized absence]."  Appellant expressly requested a punitive discharge: "I'm sorry for the trouble I have caused and respectfully request a bad-conduct discharge."  He concluded his statement by

noting: "My attorney has advised me of the negative aspects of a bad-conduct discharge; however, I still request it. Thank you." See United States v. Pineda, 54 M.J. 298, 300-01 (C.A.A.F. 2001) (setting forth procedural requirements when an accused requests a punitive discharge).

The prosecution made a very brief sentencing argument, recommending a bad-conduct discharge and "an appropriate amount of confinement." Defense counsel noted Appellant's request for a bad-conduct discharge, pointed out that the missing movement offense took place during the period of unauthorized absence, and asked the military judge to limit confinement to thirty days. The military judge sentenced Appellant to confinement for five months and a bad-conduct discharge.

F. APPELLANT'S SECOND REQUEST, SPECIFICALLY ASKING THE CONVENING AUTHORITY TO NOT SUSPEND THE BAD-CONDUCT DISCHARGE

Subsequent to trial, defense counsel submitted a request for clemency to the convening authority under R.C.M. 1105. The request began by reminding the convening authority that Appellant "went to court with a pretrial agreement that stated that in return for his pleas of Guilty . . . you agreed to suspend any discharge and any confinement in excess of 30 days." Defense counsel emphasized that the plea had been rejected because Appellant fulfilled his obligation to the truth during the providence inquiry:

12

> [T]he Military Judge would not accept a guilty plea to the missing movement charge because Pvt [Private] Parker stated that although it was common knowledge that the unit was going to Okinawa that summer, he couldn't recall ever specifically being told that by someone in an official capacity. Pvt Parker wanted to plead guilty, but based on his memory and what he could honestly testify to the judge would not accept his plea.

After recounting the results of trial, defense counsel urged the convening authority to use the pretrial agreement as the framework for post-trial action with respect to confinement:

> It is requested that you suspend any confinement in excess of 30 days. The Defense requests that when considering this request for clemency that you take into account that this was one of the terms agreed to in the original agreement. Although you decided to withdraw from the agreement when a guilty finding was not entered for the missing movement charge, the defense urges you to consider that Pvt Parker attempted to plead guilty to this charge and that it was the military judge that refused to accept the plea.

With respect to the bad-conduct discharge, however, defense counsel implored the convening authority to disregard his prior agreement to suspend the punitive discharge, emphasizing with capital letters that his client "does NOT desire his Bad Conduct Discharge be suspended."

The convening authority responded to the defense request by ordering Appellant's release from confinement even though the case had not yet been presented to him for action. As a result,

13

Appellant's sentence to confinement was reduced from the five months adjudged at trial to forty-four days.

### G. APPELLANT'S THIRD REQUEST, REITERATING HIS OPPOSITION TO SUSPENSION OF THE BAD-CONDUCT DISCHARGE

Prior to the convening authority's formal action on the findings and sentence, the defense made a further submission to the convening authority. After noting that the defense had previously submitted a clemency request, defense counsel reiterated Appellant's opposition to suspension of the adjudged discharge:

> Since Pvt Parker was released prior to the end of his sentence and he does NOT desire that his Bad Conduct Discharge be suspended, the defense has no request for clemency.

In accordance with Appellant's post-trial submissions, the convening authority approved a sentence that included the modified period of confinement and an unsuspended bad-conduct discharge.

### H. REVIEW BY THE COURT OF CRIMINAL APPEALS

The Court of Criminal Appeals held that the military judge should have accepted Appellant's plea in its entirety, on the grounds that Appellant articulated sufficient facts to support a plea of guilty to missing movement by neglect. Parker, 60 M.J. at 669. The court substituted a finding of missing movement by neglect in lieu of the finding of missing movement by design. Id. at 671. The court further held that the pretrial agreement

should have remained in effect, and it reduced Appellant's confinement from forty-four days to thirty days to reflect the terms of the agreement. Id. at 669 (citing Penister, 25 M.J. at 153). Based upon Appellant's multiple requests for an unsuspended bad-conduct discharge, the court concluded that the portion of the pretrial agreement regarding suspending the bad-conduct discharge was no longer in effect, and declined to provide further relief. Id. at 670.

## II. DISCUSSION

Appellant contends in the present appeal that his discharge should be suspended in accordance with the original pretrial agreement. We note that the Government has not appealed the ruling of the court below with respect to either the modification of the findings to conform with Appellant's plea, or the revision of the confinement portion of the sentence to conform with the pretrial agreement. When a party does not appeal a ruling, the ruling of the lower court normally becomes the law of the case. See United States v. Doss, 57 M.J. 182, 185 (C.A.A.F. 2002). The law-of-the-case doctrine, however, is a matter of appellate policy, not a binding legal doctrine. Because the law-of-the-case doctrine is discretionary, it need not be applied when the lower court's decision is "clearly erroneous and would work a manifest injustice." Id. at n.*

(citing United States v. Williams, 41 M.J. 134, 135 n.2 (C.M.A. 1994)).

In the present case, it would be inappropriate to apply the law-of-the-case doctrine. With respect to the first prong of Doss, the ruling of the court below was clearly erroneous. As noted in Penister, the military judge has broad discretion to "err on the side of caution" in deciding whether to accept a plea. 25 M.J. at 152. Here, when the military judge perceived that Appellant was not prepared to agree that his actions satisfied an element of the offense, he was well within his discretion in deciding not to accept the plea.

Contrary to the suggestion of the court below that the military judge's action had the effect of "cutting off further inquiry," Parker, 60 M.J. at 669, the military judge did not interrupt Appellant or counsel, nor did he move directly to enter a plea. Once the military judge said that he could not accept the plea in light of Appellant's responses, he called a recess. After the recess, the military judge asked Appellant if he needed additional time to consult with counsel. He then granted defense counsel's motion for an extended continuance. These steps provided Appellant with ample opportunity -- if he was prepared to plead providently -- to request that the military judge reopen the plea inquiry, but no such request was forthcoming.

16

We also note that the lower court:  (1) failed to conduct a plain error review even though Appellant did not object to the ruling on providence at trial, see United States v. Powell, 49 M.J. 460, 465 (C.A.A.F. 1998); (2) applied an incorrect de novo standard of review rather than determining whether the military judge's decision was arbitrary under Penister; and (3) improperly conducted a legal sufficiency analysis in lieu of considering whether the military judge had a reasonable basis for concluding that Appellant had not conceded the elements pertaining to actual knowledge of an official deployment decision.  See United States v. Hardeman, 59 M.J. 389, 392 (C.A.A.F. 2004).

With respect to the manifest injustice prong of Doss, we focus on the specific context of this case.  We first consider whether the Government had an incentive to appeal, and we then consider the relationship of the remedy sought to the circumstances of the case.

In the present case, the Government had little incentive to appeal the erroneous aspects of the lower court's decision.  The Government emerged from the proceedings below with a conviction for a closely related offense -- missing movement by neglect -- and all of the adjudged sentence except for fourteen days of confinement, a period that Appellant had already served.  If we were to apply the law-of-the-case doctrine here, we would be

sending the Government a message that an appeal should be lodged in every case where the lower court has articulated an incorrect legal standard -- no matter how incidental the error from the Government's perspective, and no matter how insignificant the result -- lest the Government be precluded from noting that error in the event the defense should appeal.  Given the discretionary nature of the law-of-the-case doctrine, we decline to apply it in a manner that would be so contrary to the sound administration of justice.

Applying the law-of-the-case doctrine would be manifestly unjust under the circumstances of the present appeal.  First, we note that the military judge correctly advised the parties that the pretrial agreement no longer was in effect.  The parties agreed on the record, recognizing that the plain text of the agreement supported the military judge's position.

Second, we take into account Appellant's express request that the convening authority not grant the relief he now seeks. In contrast to the court below, Parker, 60 M.J. at 670, our focus here is not on whether Appellant withdrew from the agreement, but whether we should exercise our discretion in applying the law of the case to provide Appellant with the relief that he repeatedly and expressly rejected.  Appellant specifically requested a sentence at trial that included a bad-conduct discharge, even though he was informed of the adverse

consequences of a punitive separation. The military judge granted his request. After trial, defense counsel referenced the pretrial agreement and -- expressly and emphatically -- stated that Appellant did not want the convening authority to suspend the adjudged bad-conduct discharge. After the convening authority granted clemency on confinement, Appellant made a further submission, reiterating his desire for an unsuspended bad-conduct discharge. The convening authority granted his request.

Appellant now contends that we should disregard his post-trial requests for an unsuspended discharge because they were the product of an adverse tactical situation created by the loss of his pretrial agreement when the military judge rejected his plea. Appellant suggests that in the face of an adjudged sentence to five months of confinement, as opposed to the thirty days of confinement provided for in the pretrial agreement, the defense made a tactical choice. The defense implies that Appellant chose to not request a suspended punitive discharge in order to focus the convening authority's attention on the issue of confinement.

The record expressly refutes Appellant's suggestion that Appellant's request for a punitive discharge was the product of a tactical decision. Six months prior to the convening authority's action on the sentence, the convening authority

ordered Appellant's release from confinement, and remitted the balance of the adjudged sentence to confinement.  A month prior to the convening authority's action -- when confinement was no longer at issue -- defense counsel made a further submission to the convening authority reiterating in capital letters that "Appellant does NOT desire that his Bad Conduct Discharge be suspended."  At that point, only the discharge was at issue, so there was no tactical reason for Appellant to insist that the convening authority disregard the pretrial agreement's provision for suspension of a punitive discharge.  The defense submission, however, unequivocally stated that "the defense has no request for clemency."

This case does not involve a claim that these choices were the product of ineffective assistance of counsel or that these choices were not made voluntarily by Appellant.  See Pilkington, 51 M.J. at 416.  The military judge's decision did not make it necessary for Appellant to take the unusual step of requesting that his sentence include a punitive discharge.  More important, the plea decision did not preclude Appellant from asking the convening authority to provide the relief set forth in the pretrial agreement by suspending the punitive discharge, particularly after his release from confinement.

Applying Doss, we decline to apply the law-of-the-case doctrine where the Government had little incentive to appeal,

20

where the decision of the court below was clearly erroneous, and where reliance on the doctrine would permit Appellant to benefit from that erroneous ruling and require a convening authority to provide Appellant with the very relief that he had rejected on numerous occasions.

The pretrial agreement between Appellant and the convening authority expressly provided that the convening authority could withdraw from the agreement if Appellant's plea did not remain in effect "for any reason."  The military judge ruled that Appellant's plea was improvident, a ruling well within the range of his discretion.  Under these circumstances, the convening authority acted within the terms of agreement when he withdrew from it.  Appellant is not entitled to enforcement of the agreement.

## III.  DECISION

The decision of the United States Navy-Marine Corps Court of Criminal Appeals is affirmed.

<u>United States v. Parker</u>, No. 05-0072/MC

ERDMANN, Judge, with whom GIERKE, Chief Judge, joins (dissenting):

The majority opinion finds that the United States Navy-Marine Corps Court of Criminal Appeals erred in reversing the military judge's decision to reject Parker's guilty plea to the charge of missing a movement by neglect. The majority goes on to find that Parker was not entitled to the benefit of his pretrial agreement because he specifically requested an unsuspended bad-conduct discharge.[1] Because I find that the lower court's ruling is the law of the case and that Parker is entitled to the benefit of his bargain, I respectfully dissent.

BACKGROUND

This issue arose when Parker attempted to plead guilty pursuant to a pretrial agreement. Under the pretrial agreement, the convening authority agreed to suspend any bad-conduct discharge and any confinement in excess of thirty days. After questioning Parker during the providence inquiry, as required by Rule for Courts-Martial (R.C.M.) 910 and <u>United States v. Care</u>, 18 C.M.A. 535, 40 C.M.R. 247 (1969), the military judge rejected Parker's plea because he found insufficient direct evidence of

---

[1] I am unsure why the majority reaches this issue based on their conclusion that the military judge did not err in rejecting Parker's plea. If, as the majority finds, the plea was properly rejected and there is no pretrial agreement in existence, then there is nothing for Parker to enforce. As it is unnecessary to the majority's decision, any discussion in the majority opinion about a pretrial agreement is dicta.

Parker's actual knowledge concerning the movement to satisfy the requirements of a missing movement charge under Article 87, Uniform Code of Military Justice, 10 U.S.C. § 887 (2000). The court then granted the defense's request for a continuance. During the intervening period, the Government withdrew from the pretrial agreement thereby rendering the agreement and its terms void. When the case went back to trial, there was no pretrial agreement in effect.

At trial Parker took the stand and gave the same testimony he had given when questioned during the initial providence inquiry. Trial counsel argued during his closing argument that Parker's actual knowledge of the movement could be proven by circumstantial evidence, including Parker's testimony that the upcoming movement was "common knowledge" throughout his unit. Ironically, the military judge then found Parker guilty of the greater offense (missing movement by design) based on the same evidence that he found insufficient during the plea inquiry to establish a lesser included offense (missing movement by neglect). Parker was sentenced to a bad-conduct discharge and five months of confinement.

On appeal, the Court of Criminal Appeals found that the military judge erred in refusing to accept Parker's plea. The lower court held, in reliance on United States v. Penister, 25 M.J. 148 (C.M.A. 1987), that "the military judge's erroneous

rejection of the guilty plea was not a 'failure of the accused' to fulfill any material promise or condition in the agreement." United States v. Parker, 60 M.J. 666, 669 (N.M. Ct. Crim. App. 2004). Therefore, R.C.M. 705(d)(4)(B) did not allow the convening authority to withdraw from the pretrial agreement. Despite this ruling, the lower court declined to return Parker to his original position under the pretrial agreement. The court concluded that Parker's subsequent request in his unsworn statement and in post-trial filings for an unsuspended bad-conduct discharge "was tantamount to withdrawal from that specific provision of the original pretrial agreement, or in the alternative, at least constituted a request to modify that term of the agreement." Id. at 670.

Parker petitioned this court for review of the lower court's refusal to grant the remedy he sought. The Government did not certify any issues for appeal. In particular, the Government did not certify an issue concerning the lower court's conclusion that the military judge erred by rejecting Parker's guilty plea. We granted review of Parker's assigned issue as to whether he should have received the benefit of his pretrial agreement once the Court of Criminal Appeals found error by the military judge. The majority opinion now overturns the Court of Criminal Appeals' decision based upon its conclusion that the lower court erred when it held that the military judge

3

erroneously rejected Parker's plea -- an issue that was not properly raised before this court.

DISCUSSION

I.   Error By The Military Judge and The Law of The Case Doctrine

The majority finds that the Court of Criminal Appeal's decision that the military judge erred was clearly erroneous because the military judge was "well within his discretion in deciding not to accept the plea."  As noted by the majority, the Government did not appeal the ruling of the court below.  We have previously held that where the correctness of a ruling by the Court of Criminal Appeals has not been challenged by the appellant or by certification by the Judge Advocate General (TJAG), "we will treat it as the law of th[e] case."  United States v. Grooters, 39 M.J. 269, 272-73 (C.M.A. 1994).  The ruling of the lower court becomes binding on the parties. United States v. Sales, 22 M.J. 305, 307 (C.M.A. 1986).  The ruling will not be reconsidered by this court unless "the lower court's decision is 'clearly erroneous and would work a manifest injustice' if the parties were bound by it."  United States v. Doss, 57 M.J. 182, 185 n.* (C.A.A.F. 2002).

The majority states that since the law-of-the-case doctrine is a discretionary doctrine, they will decline to apply it when that application would be contrary to the sound administration

4

of justice. As noted, prior to this decision, the standard for applying the law-of-the-case doctrine was whether it was "clearly erroneous and would work a manifest injustice." Id. In reaching this finding the majority seemingly abandons that standard and fails to recognize that establishing manifest injustice is a heavy burden and can only be proven in the most unusual of cases. See, e.g., United States v. Moran, 393 F.3d 1, 8 (1st Cir. 2004) ("[A] litigant seeking to fit within [the] confines [of the manifest injustice exception] must negotiate a steep uphill climb."); Ellis v. United States, 313 F.3d 636, 648 (1st Cir. 2002) ("[A] finding of manifest injustice requires a definite and firm conviction that a prior ruling on a material matter is unreasonable or obviously wrong."). It is difficult to find manifest injustice where the proper remedy[2] places the Government and Parker in exactly the same position they had voluntarily agreed to prior to the military judge's rejection of the plea.

Contrary to the conclusion of the majority, there is no manifest injustice here. The Government had every opportunity to certify the Court of Criminal Appeals' finding of error by the military judge as an issue for appeal. Counsel for the

---

[2] Recognizing the Court of Criminal Appeal's reversal of the military judge as the "law-of-the-case", then reinstating the pretrial agreement is the proper remedy.

Government admitted at oral argument that the Government made a conscious decision not to certify this issue for appeal. In addition, the Government first signaled its intent to argue that the military judge erred in a citation of supplemental authority submitted only <u>five days</u> prior to oral argument.[3] The Government, fully aware of this potential issue, made the conscious decision not to appeal the lower court's decision and failed even to raise the issue in its briefs.[4] These last minute tactics effectively blindsided both the opposing party and the court.

As the Government made a tactical decision to defend against Parker's claims rather than certifying any of its own, the decision of the Court of Criminal Appeals to overturn the military judge's refusal to accept Parker's plea is the law of the case. See <u>United States v. Simmons</u>, 59 M.J. 485, 488

---

[3] On October 6, 2005 the Government, for the first time, submitted authority consisting of four cases which addressed the law-of-the-case doctrine and stated that the "Government will address the cases above, and will argue that this Court is not bound by the NMCCA's decision that the military judge abused his discretion by rejecting appellant's plea of guilty to missing a movement." Submission of additional authority is appropriate to direct the court's attention to authority relevant to granted issues, not to introduce new appellate issues.

[4] The majority opinion exaggerates the lack of an incentive for the Government to appeal as the Government has certified issues for appeal to this court in cases where they have prevailed at the lower court. See <u>United States v. Long</u>, 61 M.J. 326 (C.A.A.F. 2005) (certificate for review filed). Moreover, by adopting a subjective "lack of incentive" standard, the majority removes any incentive the Government might have in the future to appeal or certify an issue for review in a timely manner.

(C.A.A.F. 2004) (finding no manifest injustice where the Government did not certify any challenge to the Court of Criminal Appeals' ruling); United States v. Kreutzer, 61 M.J. 293, 295 n.2 (C.A.A.F. 2005) (noting that lower court's ruling is the law of the case where the TJAG has the opportunity to bring the lower court's ruling before this court and chooses not to do so).  By adopting "contrary to the sound administration of justice" and "lack of incentive" standards and finding that the law of the case doctrine does not apply in this case, the majority has significantly altered, if not eliminated, that doctrine and the "manifest injustice" standard from our jurisprudence.  The new standard opens the door for the Government, at the last stages of the appellate process, to raise issues that the appellant and this court had thought were resolved at the lower court.  This is not a result that I can accept or endorse.

II.  Alternate Solution

Rather than eviscerate the law-of-the-case doctrine, a better approach is to address the underlying rule of procedure to ensure that both parties have the opportunity to appropriately raise pertinent issues in a timely manner. Consideration should be given to revising C.A.A.F. R. 19(b).[5]

---

[5] United States Court of Appeals for the Armed Forces, Rules of Practice and Procedure (as amended through October 1, 2004).

Under C.A.A.F. R. 19(b), the Government has thirty days in which to certify an issue to this court while under C.A.A.F. R. 19(a), an appellant has sixty days in which to petition for a grant of review. In many cases a judgment or order may be favorable to the Government on one claim or issue and unfavorable on another. To avoid further litigation the Government may be content to accept the favorable portion of the ruling and live with the unfavorable portion. If this court subsequently grants one or more of an appellant's issues, the government is not allowed to raise new issues unless the lower court's decision is "clearly erroneous and would work a manifest injustice" if the parties were bound to it. Doss, 57 M.J. at 185 n.*.

If the Government were provided with the right to essentially cross-appeal from granted issues, Government counsel would not need to peremptorily certify issues in split decision cases to protect itself against a possible appeal by the defendant. I therefore recommend that C.A.A.F. R. 19(b) be revised to allow that a certificate for review shall be filed with the court no later than thirty days from the date of the decision of the Court of Criminal Appeals or thirty days from the date on which this court grants review of an issue raised by an appellant, whichever is later.

III. Remedy

Although I conclude that the Court of Criminal Appeals' ruling on the military judge's error is the law of the case, I do not accept the lower court's legal conclusion that no remedy is required. Parker initially agreed to plead guilty to unauthorized absence (AWOL) and missing a movement by neglect. In return the convening authority agreed to suspend any confinement over thirty days and any punitive discharge. When the military judge rejected Parker's guilty plea to the missing movement charge, the Government withdrew from the pretrial agreement and it no longer had any effect. Parker was tried on the missing a movement by design charge and found guilty. At sentencing, with no protection from a pretrial agreement, Parker attempted to trade a punitive discharge for less time in confinement. He was sentenced to five months of confinement and a bad-conduct discharge. Before the convening authority, he again tried to trade the bad-conduct discharge for a lesser period of confinement.

Since the Court of Criminal Appeals reversed the decision of the military judge that prompted the voiding of the pretrial agreement, Parker now asks that the agreement be reinstated and its terms enforced, including the suspension of a bad-conduct discharge. The majority stresses that after the pretrial agreement was voided, Parker asked on three occasions for a bad

conduct discharge, which in the majority's view is a change of position that should be held against him. However, it is common for parties to change position in response to differing decisions from trial and appellate courts.

It defies logic to conclude that Parker, by asking for a particular punishment based on the current status of his case, modified or withdrew from a pretrial agreement that was not in existence. Parker's unsworn statement and his clemency requests were made in the context of the case at that time. He was not attempting to modify the pretrial agreement because there was no pretrial agreement to modify. He was simply doing what he thought best given the circumstances.

As the military judge erred in rejecting Parker's plea, we must put the parties back in the relative positions they held before the error was made. See Penister, 25 M.J. at 152-53 (reinstating pretrial agreement where convening authority withdrew from agreement based on erroneous ruling by the military judge); see also United States v. Clayton, 25 M.J. 888, 889 (A.C.M.R. 1988) (holding that appellant is entitled to the benefit of his pretrial agreement when the Government withdrew from the agreement based on an erroneous ruling by the military judge).

The Government made an informed decision not to appeal the Court of Criminal Appeal's ruling that the military judge erred

10

in rejecting Parker's guilty plea and it is therefore the law of the case. The parties should be returned to the position they were in prior to that error. I would reinstate the pretrial agreement. Parker should have the opportunity to plead guilty to AWOL and missing movement by neglect and the convening authority should suspend any confinement in excess of thirty days and also suspend any punitive discharge.